# Staunton

## Minnie G. Whitehead, Executrix, etc. v. Planters Bank and Trust Company.

September 9, 1942.

Record No. 2550.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Eugene C. Hurt, Jr.,* for the plaintiff in error.

*Langhorne Jones,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

Planters Bank and Trust Company, plaintiff in the trial court, brought an action at law, by notice of motion, against Foster Rison, Tunstall Rison and William Rison (co-makers on a negotiable note, dated June 12, 1938), and Minnie G. Whitehead, Executrix of R. D. Whitehead, deceased, as endorser of the note. No defense was interposed by the Risons but Minnie G. Whitehead, executrix (hereinafter called defendant), denied all liability on the note.

Defendant filed a demurrer and special plea, both of which were overruled.

There was a trial by a jury, and after all the evidence for plaintiff and defendant had been introduced, upon motion of plaintiff, the court struck out the evidence of the defendant. Upon the statement of the court that a verdict for defendant would be set aside, the jury found a verdict in favor of plaintiff.

The facts disclosed by the record, so far as they are material to a decision of the case, are as follows:

On June 12, 1938, the three defendants, Foster, Tunstall and William Rison, executed a negotiable note for the principal sum of $950, payable sixty days after date to the order of Planters Bank and Trust Company of Chatham, Virginia, which note was endorsed by R. D. Whitehead as an accommodation endorser.

On July 31, 1938, R. D. Whitehead died testate, and by his last will and testament named his widow, Minnie G. Whitehead, as sole beneficiary and as his executrix. She duly qualified as such executrix, and on the 28th day of February, 1940, made a final settlement of the estate, which the court approved.

On August 11, 1938, which was the due date of the note, Foster Rison went to the bank for the purpose of renewing the note on which R. D. Whitehead was endorser. Though interest was paid thereon, the note was not renewed on that date, for the reason that the bank's officials had not definitely decided how they wished the transaction to be handled.

On August 25, 1938, the note sued on was assigned for value received, and without recourse by the plaintiff, to Foster Rison, Tunstall Rison and William Rison. This assignment, though concluded on August 25th, is antedated August 11, 1938, and is as follows:

"August 11, 1938.

"For value received this note is assigned to Foster Rison, Tunstall Rison and William Rison, without recourse.

"Planters Bank and Trust Company, Chatham, Virginia, R. A. Duncan, V. P."

Thereupon, the Risons re-endorsed the note sued upon, executed a renewal note on what is usually called a collateral form note to the bank, and placed the assigned note as collateral security with the new note. This collateral note was renewed from time to time by the Risons, but was never endorsed by defendant.

As far as the record shows, the first information defendant had of the transaction was a letter dated September 10, 1938, in which it was stated that the transaction between the parties was as above stated.

Upon the trial of the case, Duncan testified that subsequent to the letter he had a telephone conversation with defendant, and that he understood from this conversation that defendant consented to the transaction being handled in the manner set forth. The defendant denied *in toto* that she had consented to any such arrangement.

On motion of the plaintiff, this evidence was stricken out.

Though defendant's petition sets forth five assignments of error, they are so inter-related that in reality the two determinative questions are: (1) Did the makers of the note sued on become the holders of the instrument after maturity in their own right, pursuant to the provisions of section 5681, sub-section 4 of the Code of Virginia, by reason of the written assignment of the plaintiff for value without recourse? (2) Was there such an extension of time of payment as to release the executrix of the endorser, pursuant to section 5682, sub-section 6, of the Code of Virginia?

Our conclusion is that both questions should be answered in the affirmative.

The pertinent provision of section 5681 reads as follows: "A negotiable instrument is discharged * * * when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The contention of the plaintiff is that it was never its intention to part with the note in issue.

The mere parol statement of intention by an officer of plaintiff will not suffice to emasculate the legal effect of an assignment for value and without recourse. To assign without recourse is, in legal contemplation, to divest one's self of possession of and title to the instrument assigned. Then, too, if it was the intention of plaintiff to retain possession of the note, why was it necessary to have the three Risons re-endorse the note and then re-deliver it to plaintiff? That it was not the original intention of plaintiff to hold the defendant liable is evinced by the fact that the defendant was not, on August 11th, or August 25th, notified of the arrangement with the Risons as to an extension of time for payment, but was notified on September 10th, by letter, that the matter had been concluded. No request was made of defendant that she endorse the new note, but the officer representing the plaintiff relied on what he "understood" was the attitude of defendant as to her assumption of liability.

It is further contended by plaintiff that, by reason of the extension provision contained in the note, defendant was bound thereon. That provision reads:

"We makers and endorsers also consent that time for payment of this note may be extended beyond date of maturity, without notice to us and without affecting our liability."

There is no merit in this contention. Section 5682 of the Code provides that a person secondarily liable on the instrument is discharged:

"By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the assent of the parties secondarily liable, or unless the right of recourse against such party is expressly reserved."

At the time the waiver provision was effectuated, the endorser was dead. There was no contract upon his part that his status as an endorser on the note in question should be changed to that of a surety upon a subsequent debt. It is true that defendant, as executrix, could have assumed liability, but she denies that she did so. Even though it be conceded, for the sake of argument, that the provision above quoted warranted an extension of time for payment, such extension could not be continued indefinitely after the death of the endorser. If it could be extended indefinitely, then the executrix could never settle the estate of her decedent.

The questions involved are not new ones.

In L. R. A., 1918 E., page 174, this is said: "The transfer of a note to the maker or a bill to the acceptor, at or after maturity, extinguishes the instrument; likewise, the payment of a note by the maker or a bill by the acceptor, at or after maturity, extinguishes the instrument; after such transfer or payment, the instrument cannot be reissued so as to confer any rights upon the transferee as against a party who had nothing to do with the re-issuance. One who thereafter takes the instrument takes subject to the defense of payment. There can be no recovery against an accommoda-

tion maker or a surety. The maker cannot reissue the note so as to render an endorser liable to a subsequent holder. Even though the maker has the note endorsed by the payee and transferred to a third person, such person cannot recover of an accommodation maker. * * * "

The case of *Bailes* v. *Keck*, 200 Cal. 697, 254 P. 573, 51 A. L. R. 930, has the following syllabus:

"Endorsement and delivery of a negotiable promissory note by the payee to one of several joint and several makers, after maturity and for valuable consideration, completely extinguishes the obligation of the note, and a subsequent similar assignment to a third person does not revive the note so as to make another maker liable to said holder."

In 8 Am. Jur. 439, "Bills and Notes," section 785, "By Principal Debtor Becoming Holder," it is said:

"The rule, that a negotiable instrument is discharged when the principal debtor becomes the holder of the instrument at or after maturity in his own right, was in effect long before it was enacted as a part of the Uniform Act and has been applied, or at least recognized, in numerous cases since such enactment."

In *State Sav. Bank* v. *Baker*, 93 Va. 510, 514, 25 S. E. 550, Judge Cardwell said:

"In the case of *Dey* v. *Martin*, 78 Va. 1, it was said by Lewis, P.: 'There is no doubt that, by the indulgence granted the maker of the note, the appellee as endorser thereon was discharged. An endorser of a note is a surety for the maker; and the doctrine is well established that any change in the contract, however immaterial, and even although it be for his advantage, discharged the surety, if made without his consent.

" 'An agreement to give time to the principal gives rise to the presumption that the surety has been delayed or hindered in the use of his rights and remedies, which is absolutely conclusive, and cannot be overthrown by the most convincing proof that nothing has really been lost by the delay.' "

It is to be observed that the time for payment was not extended for a *definite time* but has been repeatedly extended over a period of years.

In *Harris* v. *Citizens Bank,* etc., *Co.*, 172 Va. 111, 200 S. E. 652, Mr. Justice Holt approved the general rule, clearly stated in this language:

" 'When the principal and surety are bound to the creditor by a note or other negotiable instrument, if the creditor take from that principal a new note or bill of exchange for the debt, falling due after the period when the original obligation matures, this generally amounts to an extension of time and discharges the surety.' Brandt Suretyship Guaranty, Vol. 1 (3rd Ed.) section 398."

For the reasons stated, the judgment of the circuit court will be reversed and annulled, and this court will enter final judgment in favor of the defendant.

*Reversed.*

EGGLESTON, J., concurs in result.