Gary GREEN, Plaintiff–Appellee,

v.

Maurice P. FOLEY,
Defendant–Appellant.

Gary GREEN, Plaintiff–Appellee,

v.

Maurice P. FOLEY,
Defendant–Appellant.

Nos. 87–2639, 87–2685.

United States Court of Appeals,
Fourth Circuit.

Argued July 5, 1988.

Decided Sept. 13, 1988.

Rehearing and Rehearing In Banc
Denied Oct. 14, 1988.

John Raymond Hartnett (Brincefield & Associates, P.C., Alexandria, Va., on brief), for defendant-appellant.

Lawrence Eliot Freedman, Fairfax, Va., for plaintiff-appellee.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

The appellee, Gary Green, tries to portray the case as involving an ordinary commercial transaction in which a guarantor (appellant Maurice P. Foley) is simply trying to duck liability on a note. The attempted characterization is far from accurate. In fact, Green has been part of a scheme with two of Foley's business partners (Alan Silverstein and Stephen M. Zimpel), in which the two partners have paid off $291,647.81 in partnership indebtedness and caused the uncancelled notes to be given to Green. Green subsequently has tried to collect the face value of the notes from Foley, the third partner in the partnership, who signed the partnership notes as a guarantor.

Green repeatedly has stated in his court pleadings and arguments that he was a *bona fide* purchaser of the notes for value. Green claims he took the notes for value because Silverstein and Zimpel owed him $10,000 in legal fees for services unrelated to the partnership. Green has further claimed that the notes were properly discounted from their face value of nearly $300,000 because Green assumed the risk that Foley would be unable to make good on the guaranty.

Green is, in fact, far from an innocent holder of the notes, however. Foley discovered the true nature of the transaction between his partners and Green only after the hearing on the cross-motions for summary judgment. Foley's lawyer received, as part of discovery, the letter outlining the arrangement between Green and Foley's partners only on the morning the motion for summary judgment was being argued (he received the material after arriving in the courtroom and did not read the papers until after the hearing); he then examined Zimpel in a deposition and discovered the true nature and extent of the transaction. Until Foley obtained the letter outlining the actual agreement between Green and Foley's partners, Foley had no way of knowing that the money used to "purchase" the notes from the banks was actually money supplied by Zimpel and Silverstein. And until Foley's attorney questioned Zimpel in a deposition, he had no way of knowing that the money used was first put into the partnership bank account in order to retire the notes and was then withdrawn.

██ Meanwhile, summary judgment had been granted to Green on his claim. Foley sought relief under Fed.R.Civ.P. 60(b)(3), but the district judge ruled that the letter was "neither newly discovered evidence or fraud that would warrant any relief from the judgment." [1] We disagree.

The new evidence about Green's relationship with Foley's partners reveals the silk purse and sow's ear characteristic of the transaction. The belated disclosure that Foley's partners supplied the money (via the partnership account) to pay Sovran Bank gives Foley a meritorious defense to Green's claim. As discussed more fully below, under Virginia law, the note held by Sovran Bank was extinguished because it was paid with partnership funds. *See* Va. Code Ann. § 50-8 (1986). Even if the money had not gone through the partnership account, the note would have been extinguished because it was paid by its makers (Zimpel and Silverstein). *Whitehead v. Planters Bank & Trust Co.*, 180 Va. 76, 21 S.E.2d 724 (1942).

Because the newly discovered evidence corrects material misrepresentations in

1. "Newly discovered evidence" is, of course, a separate reason contained in Fed.R.Civ.P. 60(b)(2) for granting relief from judgment when the discovery is not made, despite due diligence, in time to move for a new trial under Fed.R. Civ.P. 59(b). Foley sought relief only under Rule 60(b)(3), which requires instead fraud, misrepresentation, or other misconduct of an adverse party. However, we note that the fact that evidence exposing misconduct by an adverse party was newly discovered after judgment despite due diligence obviously should have a significant impact on the court's evaluation of whether relief from judgment under Rule 60(b)(3) is warranted.

Green's pleadings and gives Foley an iron-clad defense of payment, we conclude that the district court abused its discretion in denying relief from summary judgment under Fed.R.Civ.P. 60(b)(3). We therefore reverse and remand in order that summary judgment may be entered for Foley, as there are no material disputed facts remaining.

## I.

Foley, Zimpel, and Silverstein were partners in Fairfax Associates, Ltd. ("the partnership"). Zimpel and Foley were general partners, each with a 40% interest, and Silverstein was a limited partner with a 20% interest. Zimpel was Managing General Partner.

The partnership executed notes with two banks. In 1982, Foley and Zimpel signed a note on behalf of the partnership for $7,800,000.00 to secure a loan from Mount Vernon Savings & Loan Association. Mount Vernon's successor is Crossland Savings Bank ("Crossland"). Foley, Zimpel, and their spouses executed a guaranty agreement promising to make good on the Crossland note.

On January 28, 1983, Foley and his wife executed a guaranty agreement with Virginia National Bank (successor: Sovran Bank) promising to make good on any loan made to the partnership up to $221,500. On September 4, 1984, Zimpel executed a note on behalf of the partnership to Virginia National Bank to secure a loan for $260,000, with payment due December 3, 1984. An additional $40,000 loan seems to have been made by Sovran Bank to the partnership; that loan was guaranteed by Zimpel and Silverstein but not by Foley.

Gary Green provided legal counsel to Zimpel and Silverstein in matters unrelated to the partnership. For that representation

Zimpel and Silverstein owed Green $10,000. On December 14, 1984, Green sent a letter to Silverstein and Zimpel detailing their agreement regarding satisfaction of the $10,000 debt through assignment or purchase in Green's name of negotiable partnership notes that had been guaranteed by Foley. In the letter (reproduced as an appendix to this opinion), Green noted that Silverstein and Zimpel "offered to buy the notes and guarantees from the banks in my name in order to free up your lines of credit on the one hand, and to pay your debt to me on the other." Outlining their agreement, the letter provided that Zimpel and Silverstein would "purchase in or have assigned to [Green's] name" certain notes guaranteed by Foley with a net amount due in excess of $275,000. The notes and guarantees were not to be marked cancelled, and Zimpel and Silverstein were to pay the "costs of acquiring the notes and guarantees and of enforcing them," unless Green elected to assume the costs of enforcement. Green was to receive anything collected on the notes and guarantees without regard to whether Foley could successfully pursue Zimpel and Silverstein for contribution or other claims involving the partnership or the notes: "In other words," Green concluded, "I will retain whatever I recover from Foley without regard to what occurs between you and Foley."[2]

On December 31, 1984, Zimpel deposited $219,256.42 of his own funds into the partnership bank account. The same day, Silverstein deposited $93,967.05 of his own funds into the partnership account. Zimpel testified in his deposition,[3] "Alan Silverstein and I deposited the money from our personal accounts into Fairfax Associates account in preparation for retiring debts of Fairfax Associates. We subsequently had discussions with our counsel in Philadelphia[4] ... Mr. Green.... And subsequent-

---

**2.** Green thus left his erstwhile clients exposed to double liability on the notes, a highly questionable act by an attorney whether or not Zimpel and Silverstein fully perceived their peril.

**3.** Zimpel's deposition was taken October 6, 1987 (three months after the summary judgment hearing in the present case), in connection with *Green v. Stephen Zimpel, Marilyn Zimpel, &*

*Fairfax Associates, Ltd.* (Law No. 76682), a related case in the Fairfax County Circuit Court in Virginia. *See infra* at 664.

**4.** The deserved reputation of Philadelphia lawyers for astuteness has hardly manifested itself here. The activities have been sharp rather than astute.

ly took the money back out of the Fairfax Associates and proceeded in another manner."

The same day, December 31, 1984, Zimpel and Silverstein took the money (totaling $313,223.47) out of the partnership account, put it back in their personal accounts, and then purchased a cashier's check for that amount in Gary Green's name. Green used the $313,223.47 cashier's check to purchase the partnership's notes from Sovran Bank. In his complaint in the instant case, however, Green merely asserted:

Plaintiff stands in the shoes of the bank. Plaintiff was a bona fide purchaser of the notes for value from the payees and holders of the notes. Defendant Maurice P. Foley owes to Plaintiff the amount of said note and interest.

In the memorandum supporting his motion for summary judgment, Green said,

In January, 1985 and February, 1985, Plaintiff Gary Green purchased the MOUNT VERNON NOTE from Crossland Savings Bank ... by paying $31,-647.81....

In February, 1985, Plaintiff purchased the SOVRAN NOTE for a purchase price of $260,000.

In a sworn affidavit on June 4, 1987, Green stated that he had "acquired all of the rights" to the Crossland and Sovran notes, "upon the payment" of $31,647.81 and $260,000, respectively. Thus, until he received a copy of the December 14 letter and took Zimpel's deposition, Foley did not know that the funds used by Green to "purchase" the notes from the two banks had been provided by Foley's partners, and that at least some of the money (the money used to purchase the Sovran notes) had passed through the partnership account.[5]

Foley knew nothing of the December 14 letter until after the July 2, 1987 district court hearing on the parties' cross-motions for summary judgment. Foley's counsel received the discovery material after he arrived in the courtroom for the hearing, and did not read the letter until after the hearing. In his brief to this Court, Green asserts that Foley's counsel "was served with a timely Response to Foley's Request for Production of Documents." Green's assertion that the letter was produced in a timely fashion is seriously undermined by the statement made by his attorney:[6]

I'll tell you frankly that the reason the letter was produced was because I in error allowed it to be produced, and having let the cat out of the bag it was gone and there was nothing else I could do about it. I've had to live with it ever since.

It is thus apparent that Green had no intention of disclosing the true manner in which he obtained the notes and correcting the misrepresentations in his pleadings.

On October 6, 1987, Foley's counsel took Zimpel's deposition and questioned him about the transaction with Green and the December 14, 1984 letter. The deposition for the first time revealed the full nature of the transaction between Green and Foley's partners. In his deposition, Zimpel testified in part:

A. The transaction of depositing the money into Fairfax Associates was in preparation for curtailing that debt.... Alan and myself were feeling very wrong that we were curtailing, the two of us were curtailing debts of the partnership that were the responsibility of all three partners and not just two partners. It was in a discussion of that particular feeling of Mr. Foley's lack of partic-

---

**5.** The source of the funds used to purchase the Crossland note and the fate of the second Sovran note (for $40,000) are not clear from the record. It appears that Zimpel and Silverstein were the source of all monies used to pay the partnership's notes, and it appears likely that one of them took custody of the smaller Sovran note (which had not been guaranteed by Foley). We need not be concerned with such factual uncertainties, however, because the two notes are not at issue in the present appeal.

**6.** The attorney's statement was made during the Zimpel deposition, which was taken in connection with a related case in Fairfax County Circuit Court. *See supra* note 3. This portion of the deposition transcript was not part of the original record on appeal. It was, however, attached to a letter sent by counsel after oral argument. We have treated the letter as a motion to supplement the record and hereby grant the motion.

ipation and responsibility for the debts of Fairfax Associates that we were discussing with Mr. Green, our Philadelphia attorney, when he reminded us of a—

[interruption by counsel, who noted that substance of conversation was privileged]

Q. Why does Gary Green's name appear on the cashier's check?

.   .   .   .   .

A. Mr. Green was retiring the debt.... Mr. Green was receiving the note in return for fees and services that we owed to him, our feeling being that at the time that Mr. Foley was not going to participate, that he probably didn't have any assets, and for us to pursue Mr. Foley would be an expense on top of already tremendous expenses, and by being able to curtail the debt with the payoff of that note we felt like at that time we were coming out of a bad situation a little bit better allowing Mr. Green to pursue that note.

.   .   .   .   .

[conferred with counsel]

A. The cashier's check for the $313,-223.47 represents the retirement of the debt of Fairfax Associates with Sovran Bank. The note for that debt was used to retire our debt with Mr. Green.

[lawyers discussed use of word "retire"; Zimpel was asked what he meant in context; Zimpel conferred with counsel and stated:]

A. I mean the paying off of the debt, not the canceling of the note.

Q. Well, the note in fact was never canceled, was it?

A. No.

Q. And one of the reasons it was not canceled was because you instructed Sovran Bank specifically not to cancel the note; isn't that correct?

[question repeated]

A. Yes, that's correct.

On August 22, 1986, Green sued the Foleys[7] in the District Court of Maryland on their guaranties on the $260,000 Sovran note ($221,500 guaranteed by the Foleys) and the $31,647.81 Crossland note (fully guaranteed by the Foleys and the Zimpels). The claim was for the full amount guaranteed, not merely the 40% obligation of Foley as a partner. Foley's motion for a change of venue to the Eastern District of Virginia was granted. In October, 1986, Foley demanded that Green institute suit against the partnership, as the principal debtor, for collection of the two notes. Pursuant to Va.Code Ann. §§ 49–25 & 49–26 (1986), Green filed suit against the partnership and the other guarantors in Fairfax County Circuit Court. *Green v. Stephen Zimpel, Marilyn Zimpel, & Fairfax Associates, Ltd.* (Law No. 76682). Although he was a necessary party, Foley was neither named in the Fairfax suit nor notified of its existence.

Foley argued below that he was entitled to summary judgment on both counts because Green did not diligently pursue the suit in the Fairfax court, as required by Virginia law. *See* Va.Code Ann. § 49–26 (1986) (after demand by surety, if creditor does not institute suit against solvent parties to contract "and prosecute the same with due diligence," creditor forfeits right to demand payment from surety). The district court dismissed the Crossland note claim because Green had failed to prosecute the Fairfax suit with diligence (no discovery had yet been taken, for example). Green has not appealed that ruling. However, the district court found that Foley had specifically *waived* that statutory right in the guaranty he signed on the Sovran note. The district court then granted Green summary judgment on the Sovran note claim.

Foley filed a Motion for Reconsideration/Motion to Vacate pursuant to Fed.R. Civ.P. 59(e) based on unfair prejudice due to Green's untimely filing and service of his Response to Foley's Motion for Summary Judgment; the motion was denied. Foley then filed a Motion for Relief from Judgment under Fed.R.Civ.P. 60(b)(3), alleging that material misrepresentations contained in Green's pleadings and motions

---

7. Mrs. Foley was dropped from the suit at an early stage.

prevented Foley from presenting a meritorious defense of payment before the entry of summary judgment. After a hearing, that motion was also denied. Foley now appeals the denial of both motions.

## II.

To obtain relief under Fed.R.Civ.P. 60(b)(3), the movant must (1) have a meritorious defense, (2) that he was prevented from fully presenting before judgment, (3) because of the adverse party's fraud, misrepresentation, or misconduct. *Square Construction Co. v. Washington Metropolitan Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir.1981). In considering those requirements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts." *Id.*

The standard of review for denial of relief under Rule 60(b) is abuse of discretion by the district judge. *United States v. Williams*, 674 F.2d 310, 312 (4th Cir.1982); *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 (4th Cir. 1974); 11 Wright & Miller, Federal Practice and Procedure § 2872 (1973). The district judge concluded here that the letter and deposition were "neither newly discovered evidence or fraud that would warrant any relief from the judgment that is requested. This is evidence that was known or could easily have been determined with due diligence at the time of the original hearing." We disagree.

## A.

Armed with the Green letter and the Zimpel deposition, Foley has a meritorious defense of payment. The Virginia Supreme Court has stated:

"The transfer of a note to the maker or a bill to the acceptor, at or after maturity, extinguishes the instrument; likewise, *the payment of a note by the maker ...* at or after maturity, extinguishes the instrument; *after such transfer or payment, the instrument cannot be reissued so as to confer any rights upon the transferee as against a party who had nothing to do with the reissuance.*

*One who thereafter takes the instrument takes subject to the defense of payment.* There can be no recovery against an accommodation maker or a surety. The maker cannot reissue the note so as to render an endorser liable to a subsequent holder. Even though the maker has the note endorsed by the payee and transferred to a third person, such person cannot recover of an accommodation maker. * * * "

*Whitehead v. Planters Bank & Trust Co.*, 180 Va. 76, 81–82, 21 S.E.2d 724, 727 (1942) (emphasis added) (quoting a commentator). *See Grizzle v. Fletcher*, 127 Va. 663, 667, 105 S.E. 457, 458 (1920) ("A person cannot buy his own debt without extinguishing it. Of course, the creditor may sell the judgment to a third person, but not to one of the judgment debtors so as to keep it alive at law.").

[█] The Sovran note has been *retired*, releasing Foley from his role as guarantor, because partnership money was used to pay off the bank. Zimpel and Silverstein put the $313,000 into the partnership account and then withdrew it to purchase the cashier's check in Green's name. Under Virginia law, "All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property." Va.Code Ann. § 50–8 (1986). By the terms of the statute, any money intentionally deposited in the partnership account becomes partnership property.

In his Brief to this Court, Green claims that Zimpel and Silverstein made a "mistake" when they put the money into the partnership account, and argues that the money never became partnership property because Zimpel and Silverstein intended "to specifically *not* extinguish the partnership debt (as would occur if the partnership had the money to pay off its own debt) and to have the entire partnership debt, including the guarantees, assigned to Green." Appellee's Brief at 17 (emphasis original). However, Zimpel testified in his deposition that he and Silverstein put their money into

the partnership account "in preparation for retiring debts of Fairfax Associates":

> A. The transaction of depositing the money into Fairfax Associates was in preparation for curtailing that debt [the Sovran notes].
>
> Q. Meaning it was going to pay the debt off, correct?
>
> A. Yes.

It is thus clear that Zimpel and Silverstein deposited the money *with the intent* to retire the partnership's debts. The funds, once deposited, therefore became partnership property. Green's assertion that the money was deposited by "mistake" may be correct in that he and his erstwhile clients subsequently regretted the action, but it is clear that inadvertence was not involved at the time the deposit was made.

■■■ Even if the funds used to pay Sovran are not deemed by law to be partnership funds, Green acted as an agent for Zimpel and Silverstein, and *retired* the debt when he paid the banks for the partnership's notes. Green is correct in arguing that the intention of the party making the payment is controlling, but only where the payor is a third party to the debt. *See Union Trust Corp. v. Fugate*, 172 Va. 82, 89, 200 S.E. 624, 627 (1939) ("Whether payment by a third person operates as a discharge of the instrument, or as a purchase vesting title in the payor, depends on the payor's intention."). Here, the payment was made by the *makers* of the note. As partners, Zimpel and Silverstein and Foley are jointly liable for all debts and obligations of the partnership. Va.Code Ann. § 50–15(b) (1986).

■■■ In addition, when one partner acts within his authority, his actions are actions of the partnership and bind the partnership. Va.Code Ann. § 50–9 (1986) ("[e]very partner is an agent of the partnership for the purpose of its business"); *Holloway v. Smith*, 197 Va. 334, 88 S.E.2d 909 (1955). Even though the cashier's check was in Green's name, Zimpel and Silverstein controlled the transaction and *instructed the bank* with regard to disposing of the notes. Zimpel testified in his deposition that he had instructed Sovran Bank not to cancel the $260,000 note. And, it appears that Zimpel or Silverstein took possession of the smaller Sovran note, even though it had ostensibly been "purchased" from Sovran by Green. *See supra* note 5. It all adds up to the type of sham transaction that releases the surety under *Whitehead v. Planters Bank & Trust Co., supra*.

### B.

It is patently obvious from the record that the misrepresentations in Green's pleadings and the fact that Foley received the December 14 letter the morning of the summary judgment hearing combined to prevent Foley from presenting the meritorious defense of payment to the district court in a timely fashion. In his pleadings Green consistently and materially misrepresented his status as a holder of the notes, claiming that he was a "bona fide purchaser of the notes for value." Green thus asserted that *he* had bought the notes from the banks, when in fact the money was supplied by Foley's partners via the partnership account. Until Foley got the December 14 letter he had no way of knowing that Green had obtained the notes in anything other than an ordinary arms-length transaction with the banks.

If Green had simply purchased the notes from the banks himself, the district court's conclusion that Foley was liable, as a guarantor, to Green as a holder in due course of the Sovran note would have been entirely correct once the district judge ruled that Foley had waived his right to require Green to pursue the principals on the Sovran note. In fact, however, it is now clear that the notes were retired with partnership funds or, at a minimum, that Green was merely an agent for Zimpel and Silverstein, whose payments retired the notes.

Faced with the clear and uncontroverted record, we are forced to conclude that the district court's finding that no fraud was present is clearly erroneous, and that the district court abused its discretion in denying Foley relief under Fed.R.Civ.P. 60(b)(3). Green's failure to disclose the true nature of the transaction between himself and Foley's partners and the banks holding the

notes "struck at the very heart of the fact finding process" that is entrusted to the district court. *Square Construction Co. v. Washington Metropolitan Area Transit Auth.*, 657 F.2d 68, 72 (4th Cir.1981). As we concluded in *Square Construction*, we conclude here that "the policy of deterring misconduct which threatens the fairness and integrity of the fact finding process must outweigh considerations of finality." *Id.* (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir.1978)). Any other result would reward Green's wrongful acts by permitting him to retain the benefit of those acts, at Foley's expense and in derogation of the proper function of the federal courts.

### III.

Foley also appeals the denial of relief under Fed.R.Civ.P. 59(e), complaining that he was unfairly prejudiced by Green's late filing of a response to Foley's motion for summary judgment. Because of our conclusion that Foley is entitled to relief from judgment under Fed.R.Civ.P. 60(b)(3), we deem it unnecessary to reach the issue.

### IV.

The question not being before us, we are not required to investigate any claims that Zimpel and Silverstein may have against Foley for his share as a partner of the partnership's indebtedness to Sovran Bank.

### V.

The order of the district court denying Foley relief under Fed.R.Civ.P. 60(b)(3) is vacated. We remand the case to the district court with instructions to enter summary judgment for Foley on the Sovran note claim, as there are no material facts in dispute and Foley is entitled to judgment as a matter of law.

VACATED AND REMANDED.

### APPENDIX TO OPINION

(Text of Letter Referred to at Page 662)

December 14, 1984

Mr. Alan M. Silverstein

Mr. Stephen M. Zimpel

7297 Lee Highway

Falls Church, VA 22042

Re: *Silverstein and Zimpel*

Dear Alan and Stephen:

I represented the two of you in connection with your acquisition of an interest in DEG. When I met with you in April, we agreed that in addition to my hourly rate, which DEG was to pay, if the deal was consumated [sic], the two of you would pay me or my firm a fee of $10,000.00 for acting as a finder and for collateral services.

On November 28, 1984 I met with you again at your office. During our discussion I raised the question of the $10,000.00, which still had not been paid. You both acknowledged the debt and offered me an alternative payment based on negotiable notes and guarantees signed by a general partner (Foley) in one of your real estate deals. You offered to buy the notes and guarantees from the banks in my name in order to free up your lines of credit on the one hand, and to pay your debt to me on the other. Subject to your completion of all of the conditions set forth below, I agree to accept the alternative payment.

The conditions are as follows:

1. You will purchase in or have assigned to my name (or the name of my law firm) notes and guarantees signed by Foley (and his wife) from certain banks, including Mount Vernon Savings and Loan as well as Sovran Bank.

2. The notes and guarantees will have a purchase price and a net amount due in a sum in excess of $275,000.

3. The notes and guarantees will not be marked cancelled.

4. The costs of acquiring the notes and guarantees and of enforcing them (unless I elect to assume the costs of enforcement) will be paid by you.

5. Anything that is collected on the notes and guarantees will belong to me (or my firm if I so elect).

6. You have represented that the notes and guarantees are valid but that you believe Foley may not have sufficient assets to pay same; therefore, you do not guarantee collection, and that is a risk I will assume.

7. You also represented that Foley had breached his agreements with you and that you have set offs and counterclaims against him. I advised you that you will not be given credit for the payments made to acquire the notes and guarantees because I will be the legal purchaser. You stated that you would assume the risk of any lawsuit by Foley for contribution and that whatever I recovered from Foley (and/or his wife) would not be subject to a reduction or payment by me to you for any sum Foley might be awarded from a cross claim, lawsuit or other action against you. In other words, I will retain whatever I recover from Foley without regard to what occurs between you and Foley.

8. If you are unable to acquire the notes and guarantees mentioned above by April 1, 1985, or if you do not satisfy the conditions, I will have the option of terminating this agreement, in which event, the said $10,000.00 fee will be paid by you.

If there is anything in this letter which does not accurately describe our agreement, please advise me promptly.

I am grateful for the opportunity you have offered in this innovative fee payment arrangement.

Sincerely,
/s/ Gary Green
GARY GREEN