907 F.2d 1137
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gary GREEN, Plaintiff-Appellant,
v.
Maurice P. FOLEY, Defendant-Appellee.
Gary GREEN, Plaintiff-Appellee,
v.
Maurice P. FOLEY, Defendant-Appellant.
 Nos. 88-2666, 88-2667.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1990.
Decided June 6, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-87-350-A)
 John William Toothman, Grad, Toothman, Logan & Chabot, P.C., Alexandria, Va. (Argued), for appellant; Philip L. Chabot, Jr., Grad, Toothman, Logan & Chabot, P.C., Alexandria, Va., on brief.
 John Raymond Hartnett, Brincefield, Hartnett & Associates, P.C., Alexandria, Va. (Argued), for appellee; Bruce Lawrence Adelson, Brincefield, Hartnett & Associates, P.C., Alexandria, Va., on brief.
 E.D.Va.
 856 F.2d 660, APPEAL AFTER REMAND.
 AFFIRMED.
 Before K.K. HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Here we are confronted by an appeal stemming from the imposition of Rule 11 sanctions against the appellant Gary Green by the district court after a remand from this Court. Green is a Pennsylvania attorney who filed suit in August 1986 against the appellee, Maurice Foley, to collect payment on two notes for about $300,000 which Foley had signed as guarantor. Foley was in a partnership, Fairfax Associates, Ltd. ("the partnership") with Alan Silverstein and Stephen Zimpel. The partnership had no assets and substantial outstanding debt, including the notes upon which Green sued. Green claimed that he was a "bona fide purchaser" from the lender, Sovran Bank. The district court granted summary judgment for Green on the notes. Foley filed for relief from summary judgment under Fed.R.Civ.P. 60(b)(3) on the basis of new evidence showing that the notes were purchased by the partnership and not by Green, but that motion was denied.[1]
 
 
 2
 We reversed. See Green v. Foley, 856 F.2d 660 (4th Cir.1988), cert. denied, 109 S.Ct. 1769 (1989). Just after the summary judgment hearing, Foley's attorney had discovered a letter from Green to Silverstein and Zimpel outlining the "purchase" of the notes. That and other evidence admitted to supplement the original record on appeal showed that on December 31, 1984, Silverstein and Zimpel deposited funds from their own personal accounts into the partnership account sufficient to pay off the two notes. Later that day, they returned the funds to their own accounts.[2] The same day, they purchased a cashier's check in Green's name sufficient to pay for the notes using funds from their own accounts. The cashier's check was then used to buy the notes from the bank in Green's name.
 
 
 3
 On appeal, we held that Foley, therefore, had an "ironclad" defense of payment. That conclusion proceeded from the fact that the funds used to purchase the note were partnership funds, so the transaction extinguished the debt and released the guarantors, including Foley. We also held that, even if the funds were not deemed by law to be partnership funds after being deposited into and then withdrawn from the partnership account, Green acted as an agent for Silverstein and Zimpel in purchasing the notes. In essence, Green, Silverstein, and Zimpel were deemed to have constructed a sham transaction to pay off the debt, while seeking to keep alive an action against Foley as a guarantor. Thus, "[i]n his pleadings Green consistently and materially misrepresented his status as a holder of the notes, claiming that he was a 'bona fide purchaser of the notes for value.' " 856 F.2d at 666. The case was remanded with orders for the district court to enter summary judgment in favor of Foley. Green's subsequent petition for rehearing, suggestion for rehearing en banc, and motion to supplement the appellate record was denied.
 
 
 4
 On remand, the district court entered summary judgment for Foley and considered motions by each side to impose sanctions under Rule 11. Green's motions for sanctions under Rule 11 and relief from judgment under Rule 60(b), along with several other motions, were denied. Foley asked for sanctions against both Green and his attorney, Lawrence Freedman, sufficient to cover Foley's legal fees in both federal and state court (about $80,000). In defense against Foley's motion for sanctions, Freedman claimed that he had been fooled along with the court because Green had told him that he had purchased the note for value and that Foley had no valid defenses to collection on the note. The district court accepted Freedman's argument and imposed no sanctions on the attorney.
 
 
 5
 Green defended against sanctions by arguing that the Court of Appeals had made its finding of misrepresentation based on only half of the story. Green maintains that Silverstein and Zimpel owed him or his firm $10,000 in legal fees for unrelated work. He says that he purchased the cashier's check by cancelling that debt and then legitimately purchased the notes with the check. The transaction was fair, according to Green, because Foley had no assets and the possibility of collecting anything on the $300,000 worth of notes was remote. To the extent that Virginia law extinguished the debt after the transactions, he, though a lawyer, was unaware of that fact and reasonably relied upon his attorney, Freedman, that his claim was valid.[3]
 
 
 6
 The district court held that it was bound by the mandate of the Court of Appeals and refused to hear Green's evidence that he acted in good faith in claiming to be a "bona fide purchaser for value." The lower court recognized that the appellate court decision did not require it to impose sanctions, but said that it felt obligated to impose sanctions "absent some extraordinary circumstances that, even accepting the proffers of the plaintiff's attorneys, I do not find to be present." The district court then ordered Green, and not his attorney, to pay $20,000. Foley had asked for sanctions sufficient to compensate him for his incurred attorney's fees, but, because the award was not intended fully to compensate Foley for attorney's fees, the judge did not closely examine the reasonableness of the fees.
 
 
 7
 We turn to consideration of Green's appeal of the imposition of sanctions and Foley's appeal of the sanction award as inadequate.
 
 
 8
 Green has complained that the district court failed to make specific factual findings sufficient to support an imposition of sanctions. It is his contention that Introcaso v. Cunningham, 857 F.2d 965, 969 (4th Cir.1988) ("[t]he district court's decision to impose Rule 11 sanctions may not be disturbed except for abuse of discretion."), has impliedly used the same standard in a Rule 11 proceeding as the standard employed to impose attorney's fees under a statutory authorization. The latter test involves twelve factors concerning the reasonableness of the fee. See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978).
 
 
 9
 The reading of Introcaso is, however, too broad. In Introcaso, the district judge had imposed sanctions for all post-verdict litigation. Through Judge Winter, we reversed because "the district court did not identify what pleading, motion, or other paper, the signing of which and the proceedings stemming therefrom, it regarded as frivolous." The district court holding there, therefore, included pleadings which may not have violated Rule 11. 857 F.2d at 970.
 
 
 10
 The district judge here, however, was very specific. The sanction stemmed from the finding that Green "consistently and materially misrepresented his status as a holder of the notes [by claiming] that he was a bona fide purchaser of notes of value."[4] That misrepresentation appeared in the complaint and other subsequent pleadings. Moreover, the entire proceedings, from their inception, stemmed from the misrepresentation in the complaint.
 
 
 11
 Green has attempted to argue that his statement in the complaint that he was a "bona fide purchaser for value" was reasonable. However, the district court held that the appellate court opinion of the Fourth Circuit precluded re-examination of that factual issue.[5] Green, to try to obviate an obvious difficulty, argued that the imposition of sanctions was a separate issue not decided by the Court of Appeals, a consideration which warranted further evidentiary findings. He also has pointed out that the district court accepted the affidavit of Green's former attorney, Freedman.
 
 
 12
 Yet, given the holding by the Court of Appeals, the district court had to accept that Green's use of the statement "bona fide purchaser for value" was not reasonable. The judge could, of course, hear evidence presenting "extraordinary circumstances" which would have justified Green's making of an unreasonable statement in a pleading. However, Green only offered evidence attacking the finding by the Fourth Circuit. In contrast, Green's attorney, Freedman, offered an affidavit explaining why he should not be sanctioned given that his signature appeared on a pleading with an unreasonable statement in it (his position was that he was misled by Green). He did not limit his approach, as Green has done, to an attack on the prior appellate court ruling.
 
 
 13
 Proceeding to a further argument made by Green, he has argued that the procedural disposition of the case has prevented him from presenting evidence to prove that he was a valid bona fide purchaser of the note and that the debt should not have been extinguished. He seeks relief from judgment under Fed.R.Civ.P. 60(b) because "such action is appropriate to accomplish justice." First, the evidence offered by Green does not necessarily show that he was a bona fide purchaser of a valid note. Second, he had ample opportunity to present evidence establishing his contention before, and the finality of the judgment should not be disturbed by his decision to attempt to do so at a very late date.
 
 
 14
 Green has sought to present evidence to show that the notes were purchased on Green's behalf using the personal accounts of Silverstein and Zimpel and not the partnership's account. He argues that the deposits by Silverstein and Zimpel into the partnership account and subsequent reversing withdrawal had nothing to do with the purchase of the notes. Green has also emphasized that Silverstein was only a limited partner and not a guarantor of either note (so he was not personally liable). Yet even under such circumstances, Virginia law would extinguish the debt and release the guarantors.
 
 
 15
 As pointed out in our earlier Fourth Circuit opinion, after "the payment of a note by the maker ... there can be no recovery against an accommodation maker or a surety." 856 F.2d at 665 (citation omitted). The funds used to pay the notes came from the partners. While the partnership is a distinct legal entity, Zimpel was personally liable for the debt.[6] Payment by him was sufficient to release the guarantors.[7] Green apparently has recognized that, had Silverstein and Zimpel bought the notes in their own names with their personal funds, the debt would have been retired. The incidental insertion of Green's name on the check acquired with personal funds of Silverstein and Zimpel should make no difference.
 
 
 16
 The second problem for Green is that he did not present his "new" evidence until after the Court of Appeals had ruled for Foley. It is true that the evidence relied upon by us (the December 14, 1984, letter from Green to Silverstein and Zimpel and deposition testimony from the state court proceeding) was presented by Foley only after the summary judgment hearing in the lower court (in a motion to vacate summary judgment). The lower court refused to reopen the judgment, and the evidence was not formally admitted into the appellate record until the decision was issued by the Court of Appeals. Green has asserted that he felt constrained to abide by the original record for appeal and was merely following the rules in not offering additional evidence outside the record.
 
 
 17
 Of course, the parties should as a general matter confine themselves to the official record. Yet special circumstances will justify a departure from the rules. Here, when Foley moved to reopen the judgment in the district court based on newly discovered evidence, Green should have alerted the court if he had additional evidence showing that Foley's evidence was inaccurate. Again, when Foley pressed the issue to the Court of Appeals, Green should have informed us of his additional evidence.[8] Barring exceptional circumstances not present here, the interests of finality and expeditious litigation are best served by enforcing the judgment as it stands.
 
 
 18
 We next have occasion to deal with Green's contention that the district judge's refusal to allow him to introduce further evidence concerning the transfer of the notes denied him due process of law. Due process does require that the party being sanctioned receive notice and an opportunity to be heard. See, e.g., Donaldson v. Clark, 819 F.2d 1551, 1559 (11th Cir.1987). The existence of the rule gives some notice, at least to attorneys.[9] Moreover, Foley's allegations of misrepresentation when he moved to vacate summary judgment and when he later moved for sanctions under Rule 11 gave Green sufficient notice.
 
 
 19
 While the attorney should have an opportunity to be heard, a separate evidentiary hearing is not usually required before imposing Rule 11 sanctions. See Advisory Committee Note to Rule 11. The scope of the hearing should depend on the seriousness of the potential sanction and the probative value of further factual inquiry.[10] Green received an opportunity to be heard, albeit only through oral argument. The contention has been made that a factual dispute exists which requires an evidentiary hearing. Specifically, Green has alleged that a factual dispute exists over his "alleged" misrepresentations to the court in stating that he was a bona fide purchaser. He has claimed to have evidence justifying that claim.
 
 
 20
 The assertion amounts to no more than an attempt to rehash the issues just presented. Green's complaint has been that he did not have an adequate opportunity to present his side of the story. He has argued that he merely followed the rules of confining his arguments to the original record and is now being penalized without a proper hearing. However, the relevant evidence has already been included in the record.
 
 
 21
 Even if it had not been, Green waived his opportunity to present the evidence by not offering it earlier. He had an opportunity to present his evidence when he responded to Foley's motions for relief from judgment and when he defended the appeal by Foley and chose not to take advantage of that opportunity. Thus, Green waived his right to present his story through his own inactions. Due process only requires an opportunity to be heard, which Green had in the prior proceedings. An additional evidentiary hearing is not necessary.
 
 
 22
 Next, Green has argued that the imposition of sanctions was not justified. Fed.R.Civ.P. 11 authorizes the court to impose sanctions if an attorney or party signs a pleading without making reasonable inquiry to establish that it was well-grounded in fact, warranted by existing law or a good-faith extension, and not motivated by an improper purpose.
 
 
 23
 Green has returned to his claim that he was a "bona fide purchaser for value" asserting that his claim was either true or, if in error, it was harmless. He again has contended that he did buy the notes by cancelling the $10,000 in fees owed by Silverstein and Zimpel.[11] In addition, he has contended that the term "bona fide purchaser" has no legal meaning in Virginia, claiming that its use was "inartful," but immaterial to the case. He has indicated that to him it is unclear under Virginia law whether the transaction should have extinguished the debt. Green should, before entering a Virginia transaction, whether a Pennsylvania lawyer or a Virginia lawyer, have made himself aware of the Virginia law's niceties. Green has emphasized that the district court ruled in his favor, even after receiving the information relied upon by the Court of Appeals. In light of those circumstances, he has argued, it was objectively reasonable for him to file suit and claim to be the equivalent of a "holder." Green's argument, however, runs into the face of the holding by us as a panel of the Court of Appeals that Green misrepresented the facts. Once again, Green is attempting to re-argue the merits of the prior appeal and they are no longer open to dispute.
 
 
 24
 Green has also sought to make the point that, even if the claim was not reasonable, he reasonably relied upon his counsel, Freedman, a Virginia lawyer. He has tried to cast all responsibility upon his attorney since a lawyer is generally responsible for the pleadings and making legal judgments. Again, we hear of Green's ignorance of Virginia law on the transaction and of reliance on his attorney.[12] Two considerations weigh against accepting such an argument. First, Green is himself an attorney who appears to have done substantial work on the case.[13] Second, it appears that Green failed adequately to inform his counsel, at least initially, by not disclosing exactly how he acquired the notes. Green could not have reasonably relied on Freedman's judgment when Green intentionally withheld crucial information about the transaction.
 
 
 25
 As a final consideration on the issue, we, at the time of the prior appeal, reacted in part to what appears to have been bad faith by Green, Silverstein, and Zimpel. The three appeared to have conspired to evade a clear precept of Virginia law at Foley's expense. Such bad faith is a relevant consideration in a Rule 11 proceeding.[14]
 
 
 26
 Green has complained that it was illogical to impose sanctions on him and not on his attorney. He has asserted that Freedman had all the pertinent information about the purchase of the note by June 19, 1987. If it were unreasonable for Green, a Pennsylvania attorney, to prosecute the claim, the theory runs, then it must have been unreasonable for Freedman to sign the pleadings, at least after June 19, 1987. Even in his affidavit in defense against Foley's motion for sanctions, Green has argued, Freedman indicated that he still believed that Green had a valid claim, intimating that Freedman may have intentionally signed pleadings under a belief which we have held to be unreasonable.
 
 
 27
 It is not usual for a court to impose a sanction only on the client,[15] but here, as elsewhere, circumstances may alter cases. Review, to succeed in reversal, is limited to a showing of an abuse of discretion. Freedman has indicated that Green misled him about the purchase of the notes. Thus, when Freedman found out the true circumstances in the midst of the proceedings, his obligations were far more complicated than in the beginning. Without exploring all the aspects of Freedman's ethical duties, it does not seem an abuse of discretion for the district court to have regarded Green as more responsible than Freedman.
 
 
 28
 On his appeal, Foley used the December 14, 1984, letter from Green to Silverstein and Zimpel to show that Green's claim to be a "bona fide purchaser for value" was false. Green has contended that the deposition of David Gunn, the bank official at Sovran, calls into question the accuracy of the evidence Foley used to show misrepresentation. He suggests that Gunn's deposition indicates that Silverstein and Zimpel used their personal funds to purchase the notes, not partnership funds. Green argues that because Foley knew about this other evidence and did not call it to the attention of the court, Foley violated Rule 11.
 
 
 29
 The argument, however, fails because Gunn's deposition did not clearly contradict the evidence used by Foley. Gunn indicated that he debited the personal accounts of Silverstein and Zimpel to pay for the cashier's check in Green's name. He also said that he did not know about the deposits to the partnership account and withdrawal of funds by Silverstein and Zimpel just prior to the purchase of the notes. Gunn hence did not know all of what Silverstein and Zimpel were doing and his deposition testimony therefore has no bearing on the legal ramifications of their actions.
 
 
 30
 Finally, both sides contest the monetary size of the sanction. The size of the award should be altered only in the case of an abuse of discretion. Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987) ("While some sanction is required when an infraction occurs, the determination of what is 'appropriate' is still a matter left to the sound discretion of the district court."). Green has protested the sanction as excessive. He has also contended that the court should only consider legal expenses for actions in federal court, and not those incurred in the state proceeding.
 
 
 31
 Foley, on the other hand, has argued that the award is insufficient to deter others from committing similar violations. Foley further has contended that other punishments, such as state bar disciplinary proceedings, should not be considered as ameliorating factors by the court in imposing sanctions. Foley has asked for all legal costs from proceedings related to Green's claim, including those in state court (a total of over $80,000).
 
 
 32
 The primary purpose behind Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation. Cabell, 810 F.2d at 467.[16] A sanction should be sufficient to deter such conduct if it is greater than the benefit to the party or attorney after discounting for the probability that no sanction will be imposed.[17] From the point of view of deterrence, the court should consider all of the costs which Green will bear for his actions (including potential bar disciplinary proceedings). Otherwise, the total penalty faced by Green could be more than "the least severe sanction adequate to serve the purpose...." Cabell, 810 F.2d at 467.
 
 
 33
 The deterrence rationale of the Rule also suggests that the court should consider the entire case, including related state court proceedings. Green has admitted that the state court litigation was initiated to facilitate his federal claim. Thus, in a broad sense, it "stemmed from" the signing of a pleading in federal court. Introcaso, 857 F.2d at 970.[18] However, other policy considerations suggest that a federal court should not impinge on state proceedings unless necessary.[19] Therefore, it is appropriate to limit the court's consideration to legal fees in the federal system (at both the district and appellate level). Thus, the district court acted within its discretion when it excluded consideration of Foley's expenses from the state court proceedings.
 
 
 34
 The district court awarded Foley $20,000 without an in-depth investigation of the reasonableness of the attorneys' fees claimed by Foley. The award is not too small because the judge properly considered other punishments Green will face and compensation is not the primary purpose.[20] The award is not too large, because Green's conduct was sufficiently egregious to warrant a significant sanction.[21]
 
 
 35
 Nor did the district court err by failing to examine the reasonableness of the fees claimed by Foley.[22] The judge awarded only a quarter of the claimed fees and the size of the expense, given the extent of litigation which has transpired, stands revealed upon a cursory investigation. Foley's reasonable legal fees must have been in excess of $20,000.[23]
 
 
 36
 In conclusion, Green's basic argument has been that he had a reasonable basis for believing, when he made the allegation, that he was a "bona fide purchaser of the notes for value." The district court properly limited his attempts to reopen the merits of that issue. The sanction imposed was reasonable under the circumstances and does not constitute an abuse of discretion. Therefore, the judgment of the district court is, in all respects,
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 Fed.R.Civ.P. 60(b)(3) provides that "the court may relieve a party ... from a final judgment ... for ... fraud ..., misrepresentation, or other misconduct of an adverse party."
 
 
 [2]
 Apparently they changed their minds, or were persuaded to do so, on how to structure the transaction
 
 
 [3]
 Even under Green's rendition of the facts, the validity of the transaction is suspect. The "loss" from discounting the value of the notes from $300,000 to $10,000 was incurred by two partners, Silverstein and Zimpel. Because they provided most of the funds to pay off the debt, and because they were "makers," the purchase extinguished the debt
 It was a false assumption that the purchase of the notes with the personal funds of Silverstein and Zimpel would not have extinguished the notes. As partners, Zimpel and Foley were jointly liable for all debts and obligations of the partnership. Va.Code Ann. Sec. 50-15(b). In addition, as partners, they were agents of the partnership. As a result, purchase of the notes by Zimpel, even with personal funds, was sufficient to retire the debt and release Foley.
 
 
 [4]
 In addition, the detail of fact finding necessary will vary with each case. Cf. Thomas v. Capital Sec. Services, Inc., 836 F.2d 866, 883 (5th Cir.1988) (en banc ) (using a sliding scale), and Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1084 (7th Cir.1987) (suggesting factual findings are not necessary when the reasons for the decision are obvious), cert. dismissed, 485 U.S. 901 (1988)
 
 
 [5]
 In Stamper v. Baskerville, 724 F.2d 1106, 1107, 1108 (4th Cir.1984), we said:
 Once a case has been decided on appeal and a mandate issued, the lower court may not "vary it [the mandate] or examine it for any other purpose than execution or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal...."
 * * *
 A lower court may decide "matters left open" only insofar as they reflect proceedings consistent with the appellate court's mandate.
 (Citations omitted.)
 
 
 [6]
 The bulk of the notes (about $200,000) was repaid by Zimpel, a general partner and guarantor
 
 
 [7]
 Under Sec. 8.3-601(3) of the Virginia Code, "[t]he liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument reacquires the instrument." Zimpel may have had a right of recourse under the partnership agreement for contribution, but not on the note
 
 
 [8]
 It defies credulity to believe that Green would have withheld exculpatory evidence. He could have filed a motion to supplement the appellate record pursuant to Fed.R.App.P. 10(e) and I.O.P. 10.4
 
 
 [9]
 See Donaldson, 819 F.2d at 1560. While Green is a plaintiff in the instant case, he is also an attorney, presumably cognizant of court rules
 
 
 [10]
 A number of courts have held that a hearing is not necessary. See, e.g., Oliveri v. Thompson, 803 F.2d 1265, 1280 (2d Cir.1986) (judge's participation in proceedings sufficient to satisfy due process), cert. denied, 480 U.S. 918 (1987), and Donaldson, 819 F.2d at 1558 (suggesting a balance test similar to that found in Mathews v. Eldridge, 424 U.S. 319 (1976))
 
 
 [11]
 When one clears away the debris, however, it is fairly clear that Green really bought the notes from Silverstein and Zimpel, not from the bank. The notes were legally cancelled while passing through the hands of the two partners
 
 
 [12]
 We need not rely on the oft repeated truism that ignorance of the law is no excuse. The failure to reduce the risk by seeking knowledgeable advice counts for as much as the fact itself of ignorance of the law
 
 
 [13]
 In his affidavit, Green has stated that his firm drafted the reply to Foley's motion to dismiss and Green's summary judgment motion
 
 
 [14]
 Green also has presented the argument that Foley had a duty to notify him about the presence of a Rule 11 issue. Such notice would have "prompted Green and his counsel to take a closer look at the situation." However, Foley alleged "misrepresentation" immediately after the summary judgment proceedings when he discovered evidence that the funds to purchase the notes came from Silverstein and Zimpel. That allegation should have been sufficient to put Green on notice of a potential Rule 11 violation
 
 
 [15]
 See Vairo, Rule 11: A Critical Analysis, 118 F.R.D. 189, 227 (1988)
 
 
 [16]
 While Rule 11 also serves to compensate the opposing party for the costs of such litigation, see Harris v. Marsh, 679 F.Supp. 1204, 1390 (E.D.N.C.1987), vacated in part on other grounds, 123 F.R.C. 204 (E.D.N.C.1988), "[t]he rule provides for sanctions, not fee shifting. It is aimed at deterring and, if necessary, punishing improper conduct rather than merely compensating the prevailing party." Anschutz Petroleum Marketing v. E.W. Saybolt & Co., 112 F.R.D. 355, 357 (S.D.N.Y.1986), quoting Schwarzer, Sanctions Under the New Federal Rule 11--A Closer Look, 104 F.R.D. 181, 185 (1985)
 
 
 [17]
 The same principle was employed by Learned Hand in his famous BPL formula (negligent if the B urden of taking care is less than the potential L oss multiplied by the P% robability of occurrence). See United States v. Carroll Towing Co., 159 F.2d 169 (2d Cir.1947)
 
 
 [18]
 Foley has suggested that the opinion in Introcaso meant to include all proceedings "stemming from" the improper signing of a pleading. However, the opinion in Introcaso does not appear to have considered the including of state court proceedings in considering sanctions. The facts of the case certainly did not present that issue to the court
 
 
 [19]
 Cf. Foval v. First Nat. Bank of Commerce in New Orleans, 841 F.2d 126, 130 (5th Cir.1988) ("Rule 11 does not apply to conduct that occurred in state court before removal"). Moreover, the state court may have procedures for imposing sanctions of its own
 
 
 [20]
 Foley's assertion in his brief that the district judge "ignored" evidence inculpating Green is baseless. The judge weighed that evidence against other considerations in reaching the $20,000 figure
 
 
 [21]
 Green has argued that attorney fees should only be considered before July 30, 1987, the date when the district court refused to grant Foley relief from summary judgment. His argument is that because the court had access to the evidence of Green's misrepresentations and nonetheless refused Foley's motion, Green's actions could not have been unreasonable. The issue is of doubtful relevance because the district judge only awarded a portion of Foley's attorney fees. In addition, our decision on appeal held that Green's position was without merit
 Green has sought to create an unmet duty which would require Foley to have filed his Rule 11 motion at the same time as he filed his Rule 60(b)(3) motion for relief from judgment in October 1987.
 
 
 [22]
 Even if the district court failed to make sufficiently detailed findings concerning the amount of the award, the findings of fact were nonetheless sufficient for the lower court to have decided that some sanction was appropriate
 
 
 [23]
 Because the award did not exceed Foley's expenses, we need not consider the question of whether Green would be entitled to additional procedural protections if the award did exceed those expenses