Peter K. DEMENTAS, Plaintiff and Appellant,

v.

The ESTATE OF Jack TALLAS, By and Through FIRST SECURITY BANK, Personal Representative, Defendant and Respondent.

No. 860351–CA.

Court of Appeals of Utah.

Nov. 17, 1988.

Peter L. Flangas (Argued), Las Vegas, Nev., for plaintiff and appellant.

Mark S. Miner, Salt Lake City, for plaintiff and appellant.

John W. Lowe (Argued), Lowe and Arnold, Salt Lake City, for defendant and respondent.

Bill Thomas Peters (Argued), Bernard L. Rose, Salt Lake City, for defendant and respondent.

Before ORME, BENCH and DAVIDSON, JJ.

ORME, Judge:

Plaintiff Peter Dementas appeals from a judgment dismissing his claim against the Estate of Jack Tallas. Dementas seeks reversal of the trial court's decision and the entry of judgment in his favor. We affirm.

### FACTS

Jack Tallas came to the United States, as an immigrant from Greece, in 1914. He lived in Salt Lake City for nearly seventy years, residing at Little America Hotel during the last years of his life. Tallas achieved considerable success in business, primarily as an insurance agent and landlord. Over a period of fourteen years, Peter Dementas, who was a close personal friend of Tallas, rendered at least some assistance to Tallas.

On December 18, 1982, Tallas met with Dementas and dictated a memorandum to him, in Greek, stating that he owed Dementas $50,000 for his help over the years for such things as picking up his mail, driving him to the grocery store, and assisting with the management of Tallas's rental properties. Tallas also indicated in the memorandum that he would change his will to make Dementas an "heir for the sum of $50,000."

Tallas kept the Greek document, retyped it in English, notarized the English version with his own notary seal, and, three days later, delivered the documents to Dementas. Tallas died on February 4, 1983, without changing his will to include Dementas as an "heir." He left a substantial estate.

Dementas filed a timely claim for $50,000 with Tallas's estate, pursuant to Utah Code Ann. § 75–3–803 (1978). A copy of the memorandum given to him by Tallas was attached to the claim. The estate denied the claim and Dementas brought this action to recover $50,000.

In its pretrial order, the trial court disposed of the issues of quantum meruit; a contract to make, change or modify a will; and gift *causa mortis*. The court found, as a matter of law, that the memorandum was at best "an acknowledgment of a previously existing debt resulting from the performance of a previously existing oral contract," and the case proceeded to trial.

Following trial, in which the court heard extensive testimony from witnesses and received numerous exhibits, the court concluded that the memorandum was executed by Tallas free from fraud, duress, or undue influence. However, the court did not find the memorandum to constitute an enforceable contract. Rather, the court found that the memorandum was an expression of Tallas's appreciation for services gratuitously performed by Dementas. The court concluded that the memorandum, both in its Greek and English versions, showed that Tallas intended—at some time in the future

—to include Dementas in his will or to otherwise compensate him, but that Tallas failed to complete the transaction prior to his death.[1] The court also ruled that Dementas's "account stated" theory was barred since no such claim was articulated in the notice of claim filed with the estate. Alternatively, the court concluded no "account stated" had been proven.

## ADEQUACY OF NOTICE OF CLAIM

■ Following Tallas's death, Dementas filed a timely notice of claim with First Security Bank, personal representative of Tallas's estate. The estate denied the claim. Dementas then commenced this action. It is the estate's contention, accepted by the trial court, that the claim adequately gave notice of a claim against the estate premised on a quantum meruit theory but did not give notice of an "account stated" claim. This position reflects an unduly restrictive view of the requirements for validly making claims on personal representatives in Utah.

The applicable statute sets forth the requirements for presenting claims against a decedent's estate, and provides in pertinent part that "[t]he claimant may deliver or mail to the personal representative *a written statement of the claim indicating its basis*, the name and address of the claimant, and the amount claimed...." Utah Code Ann. § 75–3–804(1)(a) (1978) (emphasis added). The statute disavows undue precision in the framing of such claims by concluding with the statement that "[f]ailure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made." *Id.*

In addition, the statement of purpose prefacing Utah's Probate Code provides that "the code shall be liberally construed and applied to promote its underlying purposes and policies," which include "[t]o dis-

cover and make effective the interest of a decedent in distribution of his property...." Utah Code Ann. § 75–1–102(1), (2)(b) (1978).

Finally, § 75–3–804 provides that instead of presenting a claim to a personal representative, a claimant may commence an action against the estate. Utah Code Ann. § 75–3–804(1)(b) (1978). Such an action would be commenced by filing a complaint, which complaint would only need to be sufficiently definite and precise to comply with the liberal requirements of notice pleading. *See* Utah R.Civ.P. 8(a). It would be anomalous to conclude that a claimant who opts for the less formal method of asserting a claim pursuant to § 75–3–804 must give more detailed notice than would be required in an adequate complaint.

We conclude that the claim tendered by Dementas met this notice-pleading standard for an "account stated" theory as well as, no doubt, others. The claim recited that "the estate of the above named decedent is indebted to the claimant in the amount of $50,000. Such indebtedness is based upon services rendered and acknowledgment by deceased, that the $50,000.00 is due and owing dated December 18, 1982." Moreover, a complete copy of the memorandum, in both Greek and English, was attached to and incorporated by reference in the claim.

If a claim acquaints a personal representative with a specific amount allegedly due and the general nature of the obligation, the purpose of the statute has been satisfied. Here, the claim was for $50,000 pursuant to a document executed by the deceased, which document was appended to the claim. The personal representative had all the information it needed to investigate the claim and decide whether to pay it, fight it, or settle it. It is inconsequential that the claim did not articulate particular legal theories upon which payment of the

---

1. Contracts to include persons in a will have been upheld. *See, e.g., Matter of Estate of Haywood,* 43 Colo.App. 127, 599 P.2d 976 (1979) (written contract); *In re Estate of Billinger,* 208 Kan. 327, 491 P.2d 924 (1971) (oral contract). *See also* Utah Code Ann. § 75–2–701 (1978) (requirements for establishing a contract to in-

clude person in will). Dementas was precluded by the pretrial order from arguing that the memorandum evidenced an enforceable contract entitling him to additional benefits under Tallas's will. This theory would have been unavailing in any event for lack of consideration, as hereafter more fully explained.

claim would most appropriately be premised.

Having determined that Dementas presented an adequate claim to the personal representative of Tallas's estate, we turn to a consideration of the merits of that claim. We will consider these issues: First, whether the court erred in considering certain testimony extrinsic to the written agreement; second, whether Tallas's promise to pay Dementas $50,000 was supported by any consideration; third, whether "past consideration" is adequate to support a contract; and finally, whether Dementas is entitled to recover on an "account stated" theory.

### EFFECT OF MEMORANDUM AND RECEIPT OF EXTRINSIC EVIDENCE

The English version of the memorandum, as translated and revised by Tallas, reads exactly as follows:

PETER K. DEMENTAS, is my best frient I have in this country and since he came to the United States he treats me like a father and I think of him as my own son.

I visit his house and have dinner with his family twice a week. He takes me in his car grocery shopping. He drives me to the doctor and has also takes me every week to Bingham to pick up my mail, collect the rents and manage my properties.

For all the services Peter hos given me all these years, for the use of his automobile, for the money he spent on gasoline and his time, I owe to him the amount of $50,000 (Fifty Thousand Dollars.) I have already mentioned Peter in my will for all the services and love he has offered me during all these years and I will shortly change my will to include him as my heir.

Salt Lake City, Utah
December 18, 1982
Jack G. Tallas

The memorandum appears to do three things: (1) It acknowledges that Dementas is already mentioned in the will in consideration of the various services rendered by him;[2] (2) it recites that Tallas owes Dementas $50,000 in consideration of the services rendered; and (3) it expresses an intention on the part of Tallas to change his will and make Dementas an "heir."[3] Dementas's strongest claim on appeal is that the memorandum evidences a contract under the plain terms of which he is entitled to recover $50,000.

The parties disagree on whether the memorandum is ambiguous, necessitating the receipt of extrinsic evidence to determine what was intended, or unambiguous, requiring it to be construed as a matter of law. *See generally Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985); *Seashore's, Inc. v. Hancey,* 738 P.2d 645 (Utah Ct.App. 1987). They likewise disagree on whether the agreement is an integrated one, triggering the parol evidence rule and precluding testimony for the purpose of varying the terms of the agreement. *See generally Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985). However, these usually pivotal issues need not be resolved in this case since extrinsic evidence was properly admitted in any event "to prove whether or not there is consideration for a promise, even though the parties have reduced their agreement to a writing which appears to be a completely integrated agreement." Restatement (Second) of Contracts § 218(2) (1981). *See also Soukop v. Snyder,* 709 P.2d 109, 113 (Hawaii Ct.App.1985). Moreover, the burden of proving consideration is on the party seeking to recover on the contract. *Miller v. Miller,* 664 P.2d 39, 40 (Wyo.1983). If plaintiff fails to show there

---

**2.** In Tallas's will, Dementas is one of two persons who are said to be familiar with Tallas's properties and who Tallas requested be engaged "to collect the rents of my properties and to look after and manage the same, and that they be reasonably compensated for such services."

**3.** It is only in this regard that the Greek version differs materially from the English version. The Greek version states that Tallas will change his will to name Dementas an "heir for the sum of $50,000," whereas the English version simply states that Tallas will change his will to include Dementas as an "heir." The difference is inconsequential given the posture of this case.

is consideration to support the contract, that party has failed to meet its burden and the contract will be held invalid by the court. *Id.* In a contract action in this state, consideration or a legally sufficient substitute for consideration must be established as part of plaintiff's prima facie case.[4] *General Ins. Co. v. Carnicero Dynasty Corp.,* 545 P.2d 502, 505 (Utah 1976). *But see Alexander v. DeLaCruz,* 545 P.2d 518, 519 (Utah 1976) (under Utah Code Ann. § 70A–3–307(2), different rule applies in case of negotiable instruments "when signatures are admitted or established").

## CONSIDERATION

"A generally accepted definition of consideration is that a legal detriment has been bargained for and exchanged for a promise." *Miller v. Miller,* 664 P.2d 39, 40–41 (Wyo.1983). "The mere fact that one man promises something to another creates no legal duty and makes no legal remedy available in case of non-performance." 1 A. Corbin, Corbin on Contracts § 110 (1963). "[A] performance or a returned promise must be bargained for." *Miller v. Miller,* 664 P.2d at 41 (citing Restatement (Second) of Contracts § 71 at 172 (1981)).

■ In determining whether consideration to support a personal service contract

exists, the focus is not whether the amount promised represents the fair market value for the services rendered. On the contrary, "[a]s a general rule it is settled that any detriment no matter how economically inadequate will support a promise." J. Calamari & J. Perillo, Contracts § 55 at 107 (1970). *See Gasser v. Horne,* 557 P.2d 154, 155 (Utah 1976) ("It has further been held that there is consideration whenever a promisor receives a benefit or where promisee suffers a detriment, however slight."). Thus, while the estate introduced extensive testimony as to whether the services Dementas claimed to have rendered were actually performed,[5] the court expressly admitted this testimony only insofar as it bore on Dementas's credibility and not to prove that the services were worth less than the amount Tallas promised to pay. While the testimony suggested that Dementas did not actually perform all the services he claimed to have rendered, this testimony had no relevance to the question of whether there was consideration for Tallas's promise since the testimony suggested Dementas did at least some work. In this regard, the court correctly stated: "If Tallas thought it was worth 50,000 bucks to get one ride to Bingham, that's Tallas' decision.... The only thing you can't do is take it with you."[6]

**4.** It has been held that a presumption arises from the existence of a signed written agreement—such as the memorandum in this case—that the agreement is supported by adequate consideration, but the "presumption exists only so long as there is no evidence of lack of consideration." *Grant v. Oten,* 626 P.2d 764, 766 (Colo.Ct.App.1981). Under this view, "when evidence tending to prove lack of consideration is introduced, the issue of whether there was valid consideration becomes a question of fact for the trier of fact." *Id.*

It is important to distinguish between "lack" of consideration and "failure" of consideration. When "consideration is lacking, as in this case, there is no contract. When consideration fails, there was a contract when the agreement was made, but because of some supervening cause, the promised performance fails." *General Ins. Co. v. Carnicero Dynasty Corp.,* 545 P.2d 502, 504 (Utah 1976). In addition, failure of consideration is an affirmative defense under Utah R.Civ.P. 8(c), whereas "[t]he defense of lack of consideration, a negative, is properly pleaded under Rule 8(b)." *Id.* at 505.

**5.** Much of this testimony was from employees of the postal service in Bingham and involved whether they ever saw Dementas sitting in Tallas's car when Tallas would enter the post office to get his mail. Testimony was also elicited from persons living near apartments and houses where Dementas claimed to have mowed lawns and trimmed trees.

**6.** The trial judge in this case, Judge David B. Dee, retired in 1987 after serving some ten years on the Third District Court. Judge Dee was known for his rather colorful, if occasionally irreverent, comments from the bench. The trial transcript in this difficult and protracted case includes these other glimpses of the style which endeared Judge Dee to many:

> The Court (in response to objection by counsel): "It's kind of like the old judge's statement. 'It's hearsay, I agree, but its damn good hearsay, and I want to hear it.'"
>
> \* \* \* \* \* \*
>
> The Court: Go on to your next question. This witness—who is supposed to be one witness for 15 minutes—is now into the second day,

## PAST CONSIDERATION

■ Even though the testimony showed that Dementas rendered at least some services for Tallas, the subsequent promise by Tallas to pay $50,000 for services *already performed* by Dementas is not a promise supported by legal consideration. Events which occur prior to the making of the promise and not with the purpose of inducing the promise in exchange are viewed as "past consideration" and are the legal equivalent of "no consideration." 1 A. Corbin, Corbin On Contracts § 210 (1963). This is so because "[t]he promisor is making his promise because those events occurred, but he is not making his promise in order to get them. There is no 'bargaining'; no saying that if you will do this for me I will do that for you." *Id. See also County of Clark v. Bonanza No. 1*, 96 Nev. 643, 615 P.2d 939, 943 (1980) ("A benefit conferred or detriment incurred in the past is not adequate consideration for a present bargain.").

This rule can surely work unfair results and has accordingly been criticized[7] and the object of legislation. *See* J. Calamari

and J. Perillo, Contracts §§ 54, 96 (1970). Some courts have sought to enforce promises supported only by past consideration by invoking a "moral obligation" notion to make at least some of these promises enforceable. *See Manwill v. Oyler*, 11 Utah 2d 433, 361 P.2d 177, 178–79 (1961). Although the "moral obligation" exception has not been embraced in Utah, *see id.* 361 P.2d at 178–79,[8] other courts apply the exception in cases where services rendered in the past were rendered with the expectation of payment rather than gratuitously.[9] *Id.* at 179.

Even if the "moral obligation" doctrine applied in Utah, Dementas would not prevail. The trial court found that the services rendered by Dementas to Tallas were not rendered with the expectation of being compensated, but were performed gratuitously. That finding has not been shown to be erroneous.

## ACCOUNT STATED

■ Dementas argues that even if the agreement does not constitute an enforceable contract, it nevertheless constitutes an

---

and we've still got the same witness.... [A]t the rate we're going, I will have long retired and been happily fishing in Wyoming.

\* \* \* \* \* \*

The Court (in response to an objection by counsel): You have now entered the Guinness Book of Records for the longest objection ever entered in the Third District Court ... *ever,* going back to 1896 when there wasn't any Third District Court. And the objection is taken in this light by the Court.

\* \* \* \* \* \*

The Court (in response to testimony by witness): Wait a minute. Wait. Wait. Wait. Now, the fact-finder has finally got a fact. He said, "I did it alot of times." I've identified a fact in a day and a half. Let's go to the next witness and see if we can find another one in this case.

7. "One may question the adequacy of a legal system which refuses to enforce a promise such as this: 'In consideration of your forty years of faithful service, you will be paid a pension of $200.00 per month.'" J. Calamari & J. Perillo, Contracts § 54 at 106 (1970).

8. The logical flaw in the "moral obligation" concept was accurately summarized by Justice Crockett in *Manwill:*

The difficulty we see with the doctrine is that if a mere moral, as distinguished from a legal, obligation were recognized as valid consideration for a contract, that would practically erode to the vanishing point the necessity for finding a consideration. This is so, first because in nearly all circumstances where a promise is made there is some moral aspect of the situation which provides the motivation for making the promise even if it is to make an outright gift. And second, if we are dealing with moral concepts, the making of a promise itself creates a moral obligation to perform it. It seems obvious that if a contract to be legally enforceable need be anything other than a naked promise, something more than mere moral consideration is necessary.

361 P.2d at 178.

9. As noted in *Manwill,* if services were rendered with the expectation of payment, an implied contract was probably created, 361 P.2d at 179, making resort to the "moral obligation" idea less urgent. As also noted in *Manwill,* statute of limitation problems often make reliance on a straight implied contract theory unhelpful to plaintiffs in cases like these, *see id.,* although in the instant case the written memoranda would obviate the limitation problem. *See* Utah Code Ann. § 78–12–44 (1987).

"account stated" upon which he is entitled to recover. An account stated has been defined as "an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance." 1A C.J.S. *Account Stated* § 2 (1985). Consequently, the essential elements of an account stated include "previous transactions between the parties giving rise to an indebtedness from one to the other, an agreement between the parties as to the amount due and the correctness of that amount, and an express or implied promise by the debtor to pay the creditor the amount owing." *Id.* at 68.

The trial court found that at the time the documents were executed, there were no previous monetary accounts then due and payable to be settled between Dementas and Tallas, nor were there any liquidated debts then due from Tallas to Dementas. Likewise, there was no enforceable promise by Tallas to pay Dementas.

■ Dementas's account stated claim fails for essentially the same reasons as his contract claim. "An account stated is a contract." *Mahaffey v. Sodero*, 38 N.C.App. 349, 247 S.E.2d 772, 774 (Ct.App.1978). *Accord, Andrews Electric Co. v. Farm Automation, Inc.*, 188 Neb. 669, 198 N.W.2d 463, 465 (1972) ("An account stated is a contract to pay the stated sum."). Therefore, the underlying claims on which an account stated is based must contain the basic elements of a contract, including consideration. As previously discussed, the contract premised on Tallas's promise to pay fails for lack of consideration. Nor were the individual services rendered by Dementas performed with the expectation of payment. It follows that his account stated claim fails as well. "Because accounts stated are 'intended to preserve and protect legitimate demands but not to create obligations independent of prior indebtedness,' the rendering of an account does not create a liability where no liability existed before the rendering." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir.1985). Thus, we agree that Dementas is not entitled to recover on an "account stated" theory.

## CONCLUSION

Dementas failed to prove there was any valid consideration for Tallas's promise to pay $50,000. Even if the "moral obligation" exception applied in Utah, the court found that the services Dementas performed were rendered without the expectation of payment. The "account stated" argument is likewise unavailing. We acknowledge, as have other courts in disregarding contracts for lack of consideration, that "[a]ppell[ant] will probably remain convinced [he] should be paid. Nevertheless, [he] failed to meet [his] burden of proof" and "this court will not find a contract where one has not been proved to exist." *Miller v. Miller*, 664 P.2d 39, 43 (Wyo.1983).

The judgment appealed from is affirmed. The parties shall bear their own costs of appeal.

BENCH and DAVIDSON, JJ., concur.