**Walter K. GILMORE, Plaintiff and Appellant,**

v.

**SALT LAKE AREA COMMUNITY ACTION PROGRAM, Hal J. Shultz, Robert E. Philbrick, Fred Geter, Richard Fields, Ann O'Connell, John Does 1–30, Defendants and Respondents.**

**No. 870395–CA.**

Court of Appeals of Utah.

June 8, 1989.

Rehearing Denied July 17, 1989.

---

Nann Novinski–Durando and Mark S. Miner, Salt Lake City, for appellant.

John K. Rice and Stephen W. Cook, Midvale, for respondents.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Plaintiff Walter K. Gilmore appeals from entry of summary judgment for defendants in an action for wrongful termination of employment. Gilmore contends that his former employer's written policy manual constitutes an implied-in-fact contract that altered his status as an employee-at-will. Since the existence of an implied-in-fact contract is a question of fact, we conclude that summary judgment was inappropriately entered. We, therefore, reverse and remand.

Defendant Salt Lake Area Community Action Program (Program) is a private, nonprofit Utah corporation. Through federal funding, it administers various neighborhood programs such as "Head Start." Authority is delegated to the executive director, defendant Hal J. Shultz, through its controlling board of trustees (Board). This authority includes the power to hire and fire employees, subject to review by the Board's personnel committee.

In September 1974, the Program hired Gilmore as fiscal director. Gilmore does not recall any terms or conditions of employment, other than a six-month probationary period. Gilmore received a copy of the Program's "Personnel Policies Manual" (Manual) sometime after his probationary period had ended.

As the result of an audit for the fiscal year ending March 1976, a deficit of $9,800 was discovered, and a decision was made to computerize Gilmore's department. Shultz later discovered additional accounting discrepancies that indicated the total deficit to be over $46,000. Shultz then met with Gilmore and informed him that Gilmore's job could be in jeopardy unless the deficiencies in his accounting were corrected. At the end of the year, Shultz proposed to the Board that the fiscal staff be reduced, but that Gilmore remain as office manager. The Board rejected this proposal. An alternative proposal to reorganize Gilmore's department was implemented in March 1977, and an accounting supervisor was hired. Shultz assumed Gilmore's policy-making duties; the new accounting supervisor assumed Gilmore's remaining duties and received similar compensation.

On March 14, 1977, Shultz notified Gilmore in writing that his employment was being eliminated due to a "reduction in force." Gilmore appealed the decision in a letter to Shultz, who denied the appeal and referred Gilmore to the personnel committee. An immediate hearing was scheduled, and the committee took statements from Shultz and Gilmore. Neither Shultz nor Gilmore was present while the other gave his statement. Shultz also gave the committee an outline of his reasons for dismissing Gilmore. On April 14, defendant Fred Geter, chairman of the personnel committee, informed Gilmore by letter that the termination had been upheld. Further rehearings were denied.

Gilmore subsequently wrote to the Community Services Administration (CSA), the major federal grantor to the Program, alleging that personnel policies and procedures contained in the Manual were not followed. Gilmore requested an investigation. CSA ultimately determined that the Program had violated its own procedures and CSA regulations as outlined in the Manual. The Program's funding was reduced by 10% for two years, but CSA apparently never enforced this sanction.

Gilmore filed a federal civil rights suit against the Program, its Board, and its employees in early 1979. The U.S. District Court for Utah granted summary judgment for defendants and dismissed the action for lack of federal jurisdiction. The Tenth Circuit Court of Appeals subsequently affirmed the judgment. *See Gilmore v. Salt Lake Area Community Action Program,* 710 F.2d 632 (10th Cir.1983). Gilmore's petition for rehearing was denied.

Gilmore filed this action in 1984. The parties stipulated that depositions taken in the federal action be filed and published in the instant case. After cross-motions for summary judgment, the trial court granted defendants' motion. On appeal, the parties do not contest that Gilmore was hired as an employee-at-will. Gilmore argues, however, that the Manual constituted an implied-in-fact promise that altered his status as an at-will employee.

Summary judgment must be supported by evidence, admissions, and inferences establishing "that there is no issue of material fact and the moving party is entitled to judgment as a matter of law." Utah R.Civ.P. 56(c). After reviewing the facts in the light most favorable to the opposing party, we will reverse the trial court's determination if we conclude that there is a dispute as to a material issue of fact. *Creekview Apartments v. State Farm Ins. Co.,* 771 P.2d 693, 695 (Utah App.1989). We conclude in this case that material issues of fact remain unresolved, and, therefore, summary judgment was erroneously granted.

Utah has followed the general common law rule that personal employment contracts are terminable at the will of either party "in the absence of some further express or implied stipulation as to the duration of the employment or of a good consideration in addition to the services contracted to be rendered." *Bruno v. Plateau Mining Co.,* 747 P.2d 1055, 1057 (Utah App.1987) (quoting *Bihlmaier v. Carson,* 603 P.2d 790, 792 (Utah 1979)). Until recently, the existence of implied promises that would alter the at-will relationship required conduct manifesting the mutual assent of the parties to be bound by those terms. *Bruno,* 747 P.2d at 1058. The Utah Supreme Court has held, however, that rigid adherence to this rule is no longer justified. *See Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1043 (1989) (employment-at-will creates a rebuttable presumption that employment having no specified duration may be terminated without just cause). An employee can now rebut the presumption of at-will employment by affirmatively showing that the parties expressly or impliedly intended to alter the relationship. *Id.* Evidence of such an intention may be derived from employment manuals, oral agreements, the conduct of the parties, announced personnel policies, practices of a particular trade or industry, and other circumstances. *Id.* at 1043–44. Whether there are sufficient indicia to rebut the presumption is a "question of fact." *Id.* at 1044.

In this case, there are factual questions that remain unresolved. Although the Program hired Gilmore as an at-will employee, it later issued him a Manual that allegedly defined the conditions under which his employment could be terminated. The Manual evidently outlined appeal and discipline procedures to be followed by Gilmore and the Program. These policies and procedures may, depending on the facts, limit the Program's right to terminate Gilmore's employment. Because these factual issues are clearly material to the nature of Gilmore's employment contract, summary judgment was inappropriate.

In order to determine the nature of the employment contract, the court should consider the intent of the parties and the totality of the circumstances. *Rose v. Allied Dev. Co.*, 719 P.2d 83, 85 (Utah 1986). In the course of its analysis, the court may need to determine whether issuance of the Manual constituted an intentional surrender of the Program's right to discharge Gilmore at-will. *See Bruno*, 747 P.2d at 1058. It may also be necessary to determine whether there was an implied term in the Manual, and, if so, whether the term was expressly disavowed, or whether the Program substantially complied with the Manual. *See Berube*, 771 P.2d at 1049.

Summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.