YOHO AUTOMOTIVE, INC., Plaintiff and Respondent,

v.

H.F. SHILLINGTON, aka Moe Shillington, Defendant and Appellant.

No. 880036–CA.

Court of Appeals of Utah.

Dec. 21, 1989.

Jerry J. Kaufman, Sandy, for defendant and appellant.

Duane R. Smith, Salt Lake City, for plaintiff and respondent.

Before BENCH, JACKSON and BULLOCK,[1] JJ.

---

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

## OPINION

BENCH, Judge:

Defendant H.F. "Moe" Shillington seeks to overturn a summary judgment rendered against him in an action to enforce a personal guaranty. We reverse and remand.

A summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). On appeal of a summary judgment, we review the facts in the light most favorable to the losing party, and overturn the summary judgment if we conclude that there is a dispute as to any material issue of fact. *Gilmore v. Salt Lake Area Community Action Program*, 775 P.2d 940, 942 (Utah Ct.App.1989). Defendant argues that there are numerous unresolved material facts.

We begin our review with the facts not in substantial dispute. Defendant Shillington is the franchisor of "Mr. Parts," an automotive parts retailer. Plaintiff Yoho Automotive, Inc. (YAI) is a corporation formerly in the business of supplying automotive parts and supplies to retailers, and is owned principally and operated by Vern K. Yoho. Shillington and Yoho have known each other for many years and have conducted business together previously. At least until the time of this lawsuit, Shillington relied on YAI to supply its Mr. Parts franchises with auto parts, particularly for the initial inventory of new franchises. In exchange, YAI supplied the auto parts at a substantial discount.

In late 1983 or early 1984, Shillington was approached by two men seeking to open a Mr. Parts franchise. When Shillington informed them that YAI was his primary supplier of parts, he learned that one of the men already had a poor business relationship with YAI. In spite of that poor relationship, the two men, doing business as RTEM, Inc., eventually opened a new Mr. Parts franchise in Springville, Utah, and stocked it with parts and supplies obtained from YAI. The new store later went out of business and YAI now claims that $20,815.64, with interest, is due as payment for the goods it furnished.

The principal question brought to the trial court was whether Shillington is liable on YAI's claim. YAI claims that payment is due from Shillington based on his agreement to personally guaranty payment for goods delivered by YAI to RTEM. As evidence of this guaranty agreement, Shillington's signature appears on a YAI credit application, below the following paragraph, reproduced as it appears:

### GUARANTEE

The undersigned, in consideration of delivery of merchandise by _____, to the above applicant, agrees personally to assume any liability incurred by the above company and guarantees that payment will be made strictly according to the terms set forth herein. In the event of default, the guarantor agrees to pay interests as stated herein together with costs of court and [a] reasonable attorney's fee.

Dated this _____ day of _____, 19__.

Shillington concedes he signed the document, but claims that he signed it under protest, in the face of "business compulsion," did not read or understand it, and did not intend to personally guaranty RTEM's debt. Shillington also claims that the YAI goods were delivered to RTEM beginning in April 1984, and that by the time he signed the agreement, a substantial part of the goods, if not all of them, had already been delivered. The document is undated, but Shillington believes he signed it between July 24 and August 7, 1984. In any event, Shillington states that he never agreed to be personally liable for the debt.

Yoho states that his credit manager handled the document at issue, and that Yoho had never seen it until his deposition in this action. He does not, however, dispute Shillington's estimate of the date on which the guaranty agreement was executed. Yoho merely states that he discussed the financial arrangements with one of Shillington's

employees, who said that Shillington had agreed to guaranty payment. Although Yoho never discussed the agreement with Shillington personally, he insists that no goods would have been delivered to RTEM prior to such an agreement from Shillington.

A review of this evidence in the light most favorable to Shillington indicates that the written guaranty was not executed until after the goods had been delivered. This leaves as a genuine question of material fact whether the document is merely a memorialization of a parol agreement made between the parties or their agents prior to the delivery of the goods, or a gratuitous promise made thereafter. Without a previous parol agreement, the signed document may be unenforceable. *See Dementas v. Estate of Tallas*, 764 P.2d 628, 633 (Utah Ct.App.1988) ("Events which occur prior to the making of the promise and not with the purpose of inducing the promise in exchange are viewed as 'past consideration' and are the legal equivalent of 'no consideration.'") (quoting 1 A. Corbin, *Corbin on Contracts* § 210 (1963)).

Although the trial court did not articulate its reasoning behind the grant of summary judgment, only one material fact in dispute is required to reverse a summary judgment. *See Ruffinengo v. Miller*, 579 P.2d 342, 343 (Utah 1978). Since we hold that the existence of a parol agreement is one such unresolved material fact, we reverse the summary judgment and remand the case for trial or other proceedings.[2]

JACKSON and BULLOCK, JJ., concur.

2. We make no pronouncement on the applicability of the statute of frauds, Utah Code Ann. §§ 25–5–4(2), –6 (Supp.1989 & 1989), an issue not raised by the parties.