865 P.2d 128

In re the ESTATE OF Lloyd Francis PAGE, deceased, M.P. O'Dea, Personal Representative, Appellant,

v.

Joyce LITZENBURG, Appellee.

No. 1 CA–CV 91–0351.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 28, 1993.

Review Denied Jan. 19, 1994.

Bernard Arkules, Paradise Valley, A. Paul Blunt, Scottsdale, for appellant.

Lewis and Roca by Janet A. Napolitano and Neil Taylor, Phoenix, for appellee.

## OPINION

LANKFORD, Judge.

M.P. O'Dea, personal representative of the estate of Lloyd Francis Page, appeals from orders awarding appellee Joyce Litzenburg $35,670.00 and denying O'Dea's motions for new trial and to vacate judgment. The appeal presents the following issues for our consideration:

(1) Whether the *quantum meruit* claim Litzenburg presented to the estate conferred jurisdiction on the trial court to award her recovery on an alleged oral contract with the decedent;

(2) Whether Litzenburg's claim was barred in whole or in part by the three year limitations period of Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–543;

(3) Whether the trial court abused its discretion in denying O'Dea's motion in limine to exclude Litzenburg's testimony pursuant to A.R.S. section 12–2251 ("the Dead Man's Statute");

(4) Whether Litzenburg's testimony amounted to "clear and convincing" evidence on which a claim against the estate could be based; and

(5) Whether the trial court abused its discretion in denying O'Dea's motion for new trial or his motion to vacate judgment.

Lloyd Francis Page died in July 1988. On October 7, 1988, through her former counsel, Litzenburg filed an application for informal appointment as personal representative and for unsupervised administration of the estate. Litzenburg alleged that Page left no known heirs or devisees and that she had standing to be appointed personal representative as a creditor. *See* A.R.S. §§ 14–32-3, 14–3301. The court formally appointed Litzenburg personal representative. Immediately thereafter, through the same counsel, Litzenburg filed a creditor's claim alleging:

> That from November 1977 until March 1988, the decedent lived with her in her home paying neither rent nor utilities but on occasion buying food for himself and his wife. The fair value of such tenancy would be $10,000 per year.

Through current counsel, Litzenburg later filed an amended creditor's claim that stated in part:

> Claimant is informed and believes and upon such information and belief alleges that the fair value of such services would more accurately and properly be in the sum of $35,000 and herewith makes a claim against the estate for reimbursement in that amount.

On May 24, 1989, as personal representative, Litzenburg filed a final account and petition for a decree of distribution. This document asked the court to approve payment of $30,000.00 to Litzenburg individually based on her claim.

On June 1, 1989, appellant M.P. O'Dea made his first appearance in this litigation, filing a petition for adjudication of intestacy, determination of heirs and appointment of personal representative. The petition alleged that O'Dea was the nominee of Cecil King, the decedent's first cousin and heir, and asked that O'Dea be appointed as successor personal representative. On O'Dea's motion for summary judgment, the trial court transferred the estate to the formal probate calendar and adjudicated Cecil King as heir.

Litzenburg resigned as personal representative and O'Dea was appointed successor personal representative. The court's order stated in part:

> The resignation of Joyce Litzenburg shall not terminate the obligation of Joyce Litzenburg and her attorney, Harry Finks, to produce documents and respond to Cecil King's first request for production of documents by Joyce Litzenburg, personal rep-

resentative, and her attorney, Harry Finks.

O'Dea sent interrogatories and requests for admissions to Litzenburg. O'Dea asked Litzenburg to admit there was no evidence to support her various claims against the estate. His interrogatories asked that she state the source of each fact on which she based any denial or refusal to admit, and identify each witness and each supporting or contradicting document.

Litzenburg's responses denied a request for an admission that her claim was baseless; stated that the persons who knew the underlying facts were the decedent, his deceased wife, and Litzenburg; and stated that no documents either supported or contradicted the facts on which she based her refusal to admit.

Before trial, O'Dea filed a motion in limine to exclude Litzenburg's testimony pursuant to the Deadman Statute, A.R.S. section 12–2251. The parties' joint pretrial statement reflected that only Litzenburg would testify as a witness, and identified the following contested issues of fact:

> (A) Whether Lloyd Francis Page and his wife resided in Joyce Litzenburg's home without paying her for food, utilities, shelter, etc.

> (B) Whether Lloyd Francis Page ever agreed to pay Joyce Litzenburg for such food, utilities, shelter, etc. either unconditionally or when out of debt.

The trial court denied the motion in limine.

At trial Litzenburg testified that she moved from Maryland to Sun City in 1976 or 1977. Decedent, who was her mother's second husband, drove her to Arizona in her own car and returned to Maryland. A month later decedent and Litzenburg's mother surprised her by appearing on her doorstep and asking to stay with her, saying they were broke and in debt and had nowhere to go. According to Litzenburg, she agreed to allow them to stay provided they pay $290 per month for rent and other living expenses. The rent was to accumulate monthly until decedent worked his way out of debt and could start paying her back.

Litzenburg testified that while decedent lived in her house he had no source of income to her knowledge other than from Social Security and from collecting and selling soft drink cans and old newspapers. He dressed cleanly but wore old, out-of-style clothes and sneakers with holes in them. She also testified she saw decedent write checks on occasion, including one for $1,500.00 for his wife's nursing home expenses.

Litzenburg testified that decedent and Litzenburg's mother lived with her for ten years. Litzenburg provided all utilities and cooked most of the basic meals herself. Her mother died in 1987, and decedent left when Litzenburg asked him to do so in January of 1988. Litzenburg was not aware that decedent had any relatives.

In October of 1988, Litzenburg learned from a representative of the Valley National Bank that decedent had died. Litzenburg consulted an attorney, Mr. Finks. Concerning the first claim she made against the estate, she testified, "Mr. Finks named a figure of $10,000. I didn't know whether he was saying $10,000 for the whole thing or $10,000 per year. I just went along with him. I'm inclined to go along with attorney's advice. It was a mistake."

The court ultimately allowed Litzenburg's claim against the estate in the amount of $35,670.00. The court's minute entry ruling stated:

> The court finds that the decedent, Lloyd Francis Page, lived in Joyce Litzenburg's home from November 1977 until January 1988. He agreed to pay to Joyce Litzenburg rent in the amount of $290 per month. In consideration, Joyce Litzenburg was to provide shelter, utilities, and basic meals.

> The decedent appeared to have no money and was in debt. The decedent and Joyce Litzenburg agreed that the rent would continue to accrue until he "got on his feet," was out of debt, and could pay past due rent.

> Joyce Litzenburg's testimony regarding the agreement and her distant relationship to the decedent has overcome any presumption of gratuity arising from her furnishing food and housing to a relative.

O'Dea filed a motion to vacate and for a new trial, and later an amended motion for a new trial. O'Dea's amended motion requested a new trial based on newly discovered material evidence.

The amended motion was supported by the affidavit of Frank Redman and Joni Redman, which stated that Frank Redman was the stepson of the decedent Lloyd Francis Page and the brother of Joyce Litzenburg. The Redmans had lived with Joyce Litzenburg and the decedent in Arizona from March 1987 to January 1988. During that time, the decedent had paid one fourth of household expenses such as utilities and provisions, the Redmans had paid one half of such expenses, and Litzenburg had paid the remaining one fourth. Decedent Page and his wife had told the Redmans on numerous occasions that the Pages had moved into the Litzenburg household pursuant to an agreement under which the Pages would perform all housekeeping tasks including cooking, laundry and cleaning in exchange for housing.

At the same time, O'Dea submitted his counsel's affidavit that counsel had attempted to contact Frank Redman and Joni Redman by telephone prior to the trial of this cause but had not been able to find a telephone listing for them. The Redmans had not responded to notices mailed to them concerning the estate. Counsel had assumed that the Redmans would provide no evidence helpful to the estate's contest of the claim of Joyce Litzenburg because Frank Redman is the brother of Joyce Litzenburg. After learning of the minute order of November 28, 1990, counsel wrote to the Redmans. Joni Redman telephoned counsel and advised him that the decedent and his wife had told the Redmans on several occasions that the decedent and his wife were provided housing by Joyce Litzenburg in return for the performance of household services and that the decedent had paid one fourth of the household expenses while the Redmans and the decedent lived at Joyce Litzenburg's house.

O'Dea's counsel subpoenaed the decedent's canceled checks and bank statements. He also submitted an additional affidavit of Frank and Joni Redman stating that shortly after Page's death, they turned over to Litzenburg's attorney all of Page's bank records which included canceled checks, check stubs and bank statements and showed his calculations dividing the gross household expenses and reflecting that he bore one fourth of the expenses. Litzenburg responded with an affidavit stating the Redmans had lived with her until January of 1988 when they were asked to leave, and that the Redmans' affidavit was incorrect regarding payments of household expenses made by decedent and regarding any agreement that the Pages would perform "all housekeeping tasks including cooking, laundry and cleaning."

At the hearing on O'Dea's motion and amended motion, the trial court admitted into evidence a letter from Valley National Corporation. The letter attached a copy of a canceled $100 check dated January 5, 1988, from Lloyd F. Page to Joyce M. Litzenburg for "Dec. groceries + rent—Jan." The check was endorsed for deposit by Joyce M. Litzenburg. The court also admitted a posttrial deposition of attorney Harry Finks.

The court later denied O'Dea's motions, on the ground that the exhibits and affidavit of Frank Redman and Joni Redman did not constitute "newly discovered evidence" warranting relief. The court determined that counsel had failed to demonstrate that he could not have discovered such evidence prior to trial through the exercise of due diligence.

On May 22, 1991, the trial court entered a formal order granting Litzenburg's claim against the estate in the amount of $35,670.00 and denying her an award of attorney's fees. By signed minute entry order dated May 23, 1991, the trial court denied O'Dea's motion for new trial, amended motion for new trial and motion to vacate judgment.

Also on May 23, 1991, O'Dea filed a "Rule 60(C) Motion to Set Aside Final Judgment." On June 24, 1991, O'Dea filed a timely notice of appeal from the judgment and signed minute entry order. The trial court thereafter denied O'Dea's motion to set aside final judgment "for the reasons cited by this court in its minute entry order of May 23, 1991."

This court suspended the appeal and reverted jurisdiction in the trial court to con-

sider and rule on O'Dea's Ariz.R.Civ.P. 60(c) motion. Pursuant to that order, the trial court entered a formal order denying the motion on the grounds previously stated in its minute entry ruling. O'Dea thereafter filed an amended notice of appeal appealing from the order denying the Rule 60(c) motion.

We have jurisdiction in the appeal pursuant to A.R.S. section 12–2101(C), (F)(1), and (J).

## I.

We first consider whether Litzenburg's quantum merit claim was sufficient to support an award based on a different theory, breach of an oral contract. Both Litzenburg's initial and amended claims against the estate sought recovery of the "fair value" of decedent's stay in her home from 1977 to 1988. To establish her claim at trial, however, Litzenburg relied exclusively on evidence of an express oral agreement that decedent and his wife would be allowed to live in Litzenburg's home and receive basic meals for $290 per month, which would accumulate and become due once decedent was out of debt and able to pay. The issue is whether Litzenburg's oral contract claim, upon which she recovered, materially varied from the *quantum meruit* claim she actually presented against the estate. O'Dea urges that because the real "claim" on which Litzenburg ultimately recovered was never presented to the personal representative as required, the claim was time-barred by A.R.S. section 14–3803.[1]

The claim was not barred because a creditor's claim against an estate need not specify in detail the legal theory underpinning it. In *Davey v. Janson*, 62 Ariz. 39, 153 P.2d 158

(1944), our supreme court rejected a personal representative's contention that the claim on which a creditor had obtained relief differed from the claim previously presented against the estate. The creditor's failure to initially set forth the special oral agreement later pleaded in the complaint did not render the claim insufficient. The court held that a creditor's claim need not be drafted with precision and completeness, but need only state such facts as will inform the personal representative of the amount of the demand. *Accord Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 421 P.2d 507 (1966).

The Uniform Probate Code enacted in Arizona after the decisions discussed above,[2] adopts the same "notice pleading" approach. The decision of the Utah Court of Appeals in *Dementas v. Estate of Tallas*, 764 P.2d 628 (Utah App.1988), *review pending* 101 Utah Adv.Rep. 3 (1989), exemplifies the application of this approach on facts similar to those in the instant case. In *Dementas* a close friend of the decedent submitted a claim against the estate based on a memorandum from the decedent. The memorandum stated that the decedent owed the claimant $50,000 for his help over the years, and would change his will to make the claimant an "heir for the sum of $50,000." 764 P.2d at 629.

The decedent never changed his will to include any gift to the claimant. The personal representative denied the claim, and the claimant brought an action in the probate court to recover $50,000 on theories of *quantum meruit;* contract to make, change or modify a will; gift causa mortis; and account stated.

The probate court ruled against the claimant. Although the Utah appellate court ultimately affirmed, it disagreed with the pro-

---

**1.** At all times material to this litigation, A.R.S. section 14–3803(A) provided:

All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent, unless presented as follows:

(1) Within four months after the date of the first publication of notice to creditors if notice is given in compliance with section 14–3801, except claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state.

(2) Within three years after the decedent's death, if notice to creditors has not been published.

**2.** 1973 Ariz.Sess.Laws Ch. 75.

bate court's determination that the initial claim was inadequate to preserve the "account stated" theory:

> This position reflects an unduly restrictive view of the requirements for validly making claims on personal representatives in Utah....
>
> We conclude that the claim tendered by Dementas met this notice pleading standard for an "account stated" theory as well as no doubt others. The claim recited that "the estate of the above-named decedent is indebted to the claimant in the amount of $50,000. Such indebtedness is based upon services rendered an acknowledgment by deceased, that the $50,000.00 is due and owing dated December 18, 1982." Moreover, a complete copy of the memorandum ... was attached to and incorporated by reference in the claim.
>
> If a claim acquaints a personal representative with a specific amount allegedly due and the general nature of the obligation, the purpose of the statute has been satisfied. Here, the claim was for $50,000 pursuant to a document executed by the deceased, which document was appended to the claim. The personal representative had all the information it needed to investigate the claim and decide whether to pay it, fight it, or settle it. It is inconsequential that the claim did not articulate particular legal theories upon which payment of the claim would be most appropriately be premised.

764 P.2d at 630–31.

Litzenburg's amended claim sought $35,000 as the "fair value" of lodging, utilities, food, laundry and personal care, while her claim before the trial court was for payment in approximately the same amount under an alleged oral contract by which the decedent agreed to pay for living expenses. The factual bases and approximate amounts were the same. Litzenburg's amended claim gave O'Dea all the information he needed to investigate and decide whether to pay the claim, dispute it or settle it.[3] Litzenburg's oral contract claim was not barred for failure adequately to comply with A.R.S. section 14–3803(A).

## II.

■ We next consider whether Litzenburg's claim was wholly or partly barred by the three-year limitation period imposed by A.R.S. section 12–543. That statute provides in part:

> There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:
>
> 1. For debt where the indebtedness is not evidenced by a contract in writing.

Two distinct lines of cases consider the interpretation of similar contracts. Annotation, *When Statute Of Limitations Commences To Run Against Promise To Pay Debt: When Able, When Convenient, Or The Like*, 28 A.L.R.2d 786 (1953). The annotation indicates that a small minority of decisions holds that a promise to pay "when able" or "when convenient" is too indefinite to constitute a true conditional promise, and therefore is deemed an absolute promise to pay within a reasonable time. *Id.* at 788–91. The large majority of cases hold that such a promise is genuinely conditional, and no

---

3. O'Dea's reliance on *Brown v. Taylor*, 500 So.2d 309 (Fla.App.1986) is misplaced. There the appellee presented evidence newly seeking recovery of $10,000 from the estate in the probate court, and moved successfully to amend his complaint to conform to the evidence. On appeal, the court observed that the $10,000 claim had never been included in appellee's initial claim against the estate, and understandably reversed.

O'Dea also relies on a line of Montana decisions that considers the "scope of the claim" in determining whether a creditor's proof in court "materially varies" from the claim he previously presented to the executor. *See Ziegler v. Kramer*, 175 Mont. 236, 573 P.2d 644, 646 (1977) (con-

tract claim vs. claim of gift *causa mortis*); *Brown v. Midland Nat'l Bank*, 150 Mont. 422, 435 P.2d 878 (1967) (debt claim vs. suit for breach of oral contract to bequeath); *Brion v. Brown*, 135 Mont. 356, 340 P.2d 539 (1959) (*quantum meruit* claim vs. action on contract to deed or devise real property). Even apart from the question from whether the "scope of the claim" test that those cases apply is too narrow to accord with the prevailing Arizona and Uniform Probate Code approach, these cases involve situations in which the difference between the initial claim and that later pursued in court was considerably greater than that in the instant case.

cause of action accrues until the promisor in fact becomes able to pay. *See In re Clover's Estate*, 171 Kan. 697, 237 P.2d 391, 28 A.L.R.2d 779 (1951). Further, under this view, the question of when the statute commences to run does not depend on when the promisee actually learned that the promisor became able to pay, but upon when his ability to pay became a fact. *Id.*; 28 A.L.R.2d at 791–92. *Accord Guerin v. Cassidy*, 38 N.J.Super. 454, 119 A.2d 780 (1955); *Lorenzo v. Bussin*, 7 A.D.2d 731, 180 N.Y.S.2d 625 (1958), *amended* 7 A.D.2d 1019, 185 N.Y.S.2d 242 (1959); *Estate of Buckingham*, 9 Ohio App.2d 305, 224 N.E.2d 383 (1967).

We consider the majority view better reasoned and more in accord with the intent of the parties in such situations. Accordingly, Litzenburg's contract claim accrued, and the three-year statutory limitation period commenced to run, when the decedent was "out of debt" and able to pay under the contract as a matter of fact, whether or not Litzenburg was aware of it.[4]

■ We reject O'Dea's argument that Litzenburg was obligated to defeat the statute of limitations defense by offering proof that the decedent only became able to pay at a time within the three years preceding Litzenburg's assertion of her claim. O'Dea's reliance on *Engle Brothers, Inc. v. Superior Court*, 23 Ariz.App. 406, 533 P.2d 714 (1975) on this point betrays a fundamental confusion between "commencement" and "tolling" of a statutory limitations period.

The statute of limitations is an affirmative defense. Ariz.R.Civ.P. 8(b). Because that is so, the defendant bears the burden of proof in establishing it. *Selby v. Karman*, 20 Ariz. App. 206, 511 P.2d 650 (1973), *vacated on other grounds*, 110 Ariz. 522, 521 P.2d 609 (1974). This burden includes establishing when the claim accrued. It is only after the defendant demonstrates that the complaint was filed beyond the expiration of the statutory limitations period after the claim accrued that the burden shifts to the plaintiff to prove, if he can, that for some legally sufficient reason the running of the statute of limitations was tolled. *Selby v. Karman*, 20 Ariz.App. at 207–8, 511 P.2d at 651–2.

Of course, when the face of the complaint itself demonstrates that it was filed beyond the expiration of the limitations period after the plaintiff's claim accrued, the defendant's initial burden of proof is discharged, and the issue becomes whether the plaintiff can prove that the statutory limitations period was tolled. *See Engle Brothers, Inc.*, 23 Ariz. App. at 408, 533 P.2d at 716. However, nothing filed by Litzenburg alleged or demonstrated when her claim against the decedent actually accrued. Accordingly, O'Dea was required to show affirmatively that Litzenburg's claim accrued at a time more than three years before Litzenburg asserted her claim. O'Dea produced no meaningful evidence on this point. Accordingly, O'Dea failed to establish a limitations defense.

### III.

■ The third issue is whether the trial court abused its discretion in permitting Litzenburg to testify despite the Dead Man's Statute. The Dead Man's Statute, A.R.S. section 12–2251, provides:

In an action by or against personal representatives, administrators, guardians or conservators in which judgment may be given for or against them as such, neither

---

4. Litzenburg incorrectly relies on *Healey v. Coury*, 162 Ariz. 349, 783 P.2d 795 (App.1989) for the proposition that when the payment of a contractual debt is conditioned on the occurrence of a future event, the statute of limitations does not begin to run until payment is demanded and refused. The *Healey* opinion actually indicates that the limitations period began when a condition precedent to the obligation—the profitability of an RV park—was fulfilled. When the condition was satisfied, the cause of action accrued.

On the other hand, O'Dea mistakenly relies on *Estate of Musgrove*, 144 Ariz. 168, 696 P.2d 720 (App.1985) for the proposition that the three-year limitations period commenced to run upon the formation of the agreement between Litzenburg and the decedent. *Musgrove* holds that where a contract is silent as to the time of repayment, and demand for performance is not an express condition precedent to the duty to perform, the statute of limitations begins to run when the contract is made. The contract here was not silent on the time of repayment, but instead expressly conditioned repayment on decedent's getting himself out of debt.

party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent.

■ The trial court has discretion in admitting or excluding testimony concerning transactions with or statements by a decedent within A.R.S. section 12–2251. *Estate of Mustonen*, 130 Ariz. 283, 635 P.2d 876 (App.1981); *Cachenos v. Baumann*, 25 Ariz. App. 502, 544 P.2d 1103 (1976). The trial court's discretion will be upheld when injustice will result if the testimony is rejected or when independent evidence corroborates the transaction with the decedent. In *Mustonen* we held that corroboration and avoiding injustice were not truly separate concerns. "[T]he doing of justice is the real concern while the presence or absence of corroboration is only an indicator of the needs of justice." 130 Ariz. at 285, 635 P.2d at 878.

Given the state of discovery at the time of trial, the trial court could reasonably have determined that it would be unfair to Litzenburg to preclude her from introducing the only evidence available to support her claim. The decision to admit this testimony was not an abuse of discretion.

### IV.

■ We also reject O'Dea's contention that Litzenburg's testimony did not constitute "clear and convincing" evidence as required by *Johnson v. Moilanen*, 23 Ariz. 86, 201 P. 634 (1921). The determination of whether evidence is "clear and convincing" is committed to the trial court. Even when the required standard of proof is clear and convincing evidence, the trial court's findings will be sustained on appeal as long as the record contains substantial evidence to support them. *Hopper v. Industrial Comm'n*, 27 Ariz.App. 732, 558 P.2d 927 (1976). Litzenburg's testimony constituted substantial evidence supporting the trial court's findings.

### V.

The final question presented is whether the trial court abused its discretion in denying O'Dea's motion for new trial or his motion to vacate the judgment.

O'Dea moved for a new trial pursuant to Ariz.R.Civ.P. 59(a) in part because of "newly discovered material evidence." He moved for relief under Rule 60(c) on the ground of "fraud, misrepresentation or other misconduct of an adverse party." The trial court denied O'Dea's amended motion for new trial on the ground that his counsel had failed to demonstrate he could not have discovered the new evidence before trial through the exercise of due diligence. The trial court denied O'Dea's Rule 60(c) motion for the same reasons.

O'Dea now contends the trial court erred in denying his motion for new trial because Litzenburg successfully misled the estate. O'Dea argues the trial court erred in denying his Rule 60(c) motion because relief under Rule 60(c)(3) does not require due diligence, and relief may be granted whenever misconduct of an adverse party has prevented a losing party from fully and fairly presenting his case or defense.

### Motion For New Trial

■ Ariz.R.Civ.P. 59(a)(4) authorizes the trial court to vacate its judgment and grant a new trial based on "material evidence, newly discovered, which with reasonable diligence could not have been discovered and produced at the trial." Whether or not the aggrieved party exercised due diligence is a question of fact for the trial court. *Falcon v. Beverly Hills Mortgage Corp.*, 168 Ariz. 527, 815 P.2d 896 (1991).

In this case, whether decedent and his wife had resided in Litzenburg's home without paying her for their living expenses was one of only two contested issues of fact presented in the parties' joint pretrial statement. O'Dea's counsel admitted that he had been unable to contact the Redmans earlier in connection with their own separate claim against the estate. He also acknowledged that in any event he had believed their testi-

mony would be favorable to Litzenburg, and made no effort to contact them before trial to call them as witnesses.

The following exchange also occurred during argument on the motion:

THE COURT: Wasn't that check or the account or checks from that account, or statements, available to the personal representative before the trial?

MR. ARKULES: We had no reason to believe that Mrs. Litzenburg—we couldn't conceive of the fact Mrs. Litzenburg would be nothing more than a bare-faced schemer. We didn't believe she would go so far as to file a claim against the estate for services for which she had been paid. The theory of the case was a moral one, ... we felt that she had a moral claim against the estate. We just couldn't conceive of the fact that this very nice looking lady would go so far as to assert a completely fraudulent claim against the estate.

THE COURT: But those checks and bank statements were available to the personal representative prior to the trial?

MR. ARKULES: They were, your Honor, if we had thought they fitted in with the theory of the case.

THE COURT: I don't understand.

MR. ARKULES: Our theory was Mrs. Litzenburg was asserting a case originally based on a moral consideration. She later alleged that she had a contract with the decedent. We couldn't imagine that she also, she, in fact, had been paid by the decedent. We thought perhaps she might have conceived the idea of alleging she had a contract, but didn't imagine that she would go so far as to allege she had not been paid when, in fact, she had been paid.

The trial court could have found that the record did not demonstrate due diligence. It therefore did not abuse its discretion in denying the motion for a new trial.

### Motion For Relief Under Rule 60(c)

 Ariz.R.Civ.P. 60(c)(3) is identical to Rule 60(b)(3), Federal Rules of Civil Procedure. Arizona courts give great weight to federal court interpretations of the rules of procedure. *Edwards v. Young,* 107 Ariz.

283, 486 P.2d 181 (1971). The prerequisites to relief under this provision are as follows:

To obtain relief under Fed.R.Civ.P. 60(b)(3), the movant must (1) have a meritorious defense, (2) that he was prevented from fully presenting before judgment, (3) because of the adverse party's fraud, misrepresentation, or misconduct. *Square Construction Co. v. Washington Metropolitan Area Transit Auth.,* 657 F.2d 68 (4th Cir.1981). In considering those requirements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts."

*Green v. Foley,* 856 F.2d 660, 665 (4th Cir. 1988), *cert. denied,* 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989). "Misconduct" within the rule need not amount to fraud or misrepresentation, but may include even accidental omissions. *Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir.1988). "Because [Federal] Rule 60(b) is remedial and to be construed liberally, and because of the comprehensive sweep of 60(b)(3) any fraud, misrepresentation, circumvention or other wrongful act of a party in obtaining a judgment so that it is inequitable for him to retain the benefit thereof, constitute grounds for relief within the intendment of 60(b)(3)." 7 Moore's Federal Practice section 60.-24(5), p. 60–211 (2d ed. 1993). The *Anderson* court further stated:

[I]n motions for a new trial under the misconduct prong of Rule 60(b)(3), the movant must show the opponent's misconduct by clear and convincing evidence. Next, the moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial. This burden may be shouldered either by establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery. The burden can also be met by presumption or inference, if the movant can successfully demonstrate that the misconduct was knowing or deliberate. Once a presumption of substantial interference arises, it can alone carry the day, unless defeated by a clear and convincing demonstration that the consequences of the misconduct were nugacious.

Alternatively, if unaided by a presumption—that is, if the movant is unable to prove that the misconduct was knowing or deliberate—it may still prevail as long as it proves by a preponderance of the evidence that the nondisclosure worked some substantial interference with the full and fair preparation or presentation of the case. 862 F.2d at 926.

In this case, the misconduct on which O'Dea relies was Litzenburg's false answer to O'Dea's interrogatory concerning the existence of any documents that might undermine her claim against the estate, and her allegedly perjurious testimony that the decedent paid her nothing under their alleged oral contract. We are greatly troubled by the implications of the testimonial and documentary evidence O'Dea's counsel belatedly uncovered. It is certainly true that Litzenburg did not have sole custody of decedent's bank records, and could not have prevented O'Dea from examining them. It is also true that the single canceled check obtained by O'Dea does not itself demonstrate that decedent and his wife fully compensated Litzenburg for their living expenses over their 11–year stay. On the other hand, decedent's canceled check, identified on its face as covering rent and expenses and personally endorsed by Litzenburg, was plainly evidence that would have been valuable at trial. Further, the existence of that check raises a conspicuous inference that Litzenburg engaged in knowing or deliberate misconduct that would support a presumption of substantial interference with O'Dea's ability fully and fairly to prepare for and proceed at trial within the *Anderson* analysis. The failure to disclose or produce evidence requested in discovery can constitute misconduct justifying relief under the rule. *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir.1983).

The trial court denied O'Dea's motion for relief under Rule 60(c)(3) strictly on the ground that his counsel had failed to demonstrate that he could not have discovered the rent check and the Redmans' testimony through due diligence before trial. As we have held, this was a sufficient basis for denying a new trial but insufficient to support a denial of Rule 60(c) relief. *See Harre v. A.H. Robins Co.*, 750 F.2d 1501 (11th Cir.1985), *modified* 866 F.2d 1303 (11th Cir.1989) (failure to discover expert's misstatements on cross-examination at trial was not bar to Rule 60 relief).[5] The trial court's denial of Rule 60(c) relief therefore rested on an error of law. We reverse the trial court's order denying O'Dea's motion for Rule 60(c) relief and remand for reconsideration of that motion in light of the analysis and standards set forth in *Anderson*, 862 F.2d at 910, and *Green*, 856 F.2d at 660.

### CONCLUSION

The trial court's order denying O'Dea's motion for new trial and amended motion for new trial is affirmed. The trial court's order granting Litzenburg's claim in the amount of $35,670.00 against the estate is affirmed subject to further proceedings pursuant to Ariz. R.Civ.P. 60(c)(3). The trial court's order denying O'Dea's motion to set aside final judgment is reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded with directions.

VOSS, P.J., and GERBER, J., concur.

---

5. *In re M/V Peacock*, 809 F.2d 1403 (9th Cir.1987), cited by Litzenburg, is distinguishable. In that case, the misstatements were made in a trial brief, "after [claimant] had almost two years to prepare her case"; the misstatements were not made in discovery. *Id.* at 1405.